**Theodore MEISEL, Plaintiff,**

**v.**

**NORTH JERSEY TRUST COMPANY OF RIDGEWOOD, NEW JERSEY, INCORPORATED, First Discount Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Reynolds & Company, Defendants.**

United States District Court
S. D. New York.
May 22, 1963.

See also 216 F.Supp. 469.

Mermelstein, Burns, Lesser & Goldman, New York City, Stanley Goldman, New York City, Gerald D. Fischer, of counsel, for plaintiff.

Townsend & Lewis, New York City, Eliot H. Lumbard, Donald F. X. Finn,

Thomas J. Finnegan, Jr., New York City, of counsel, for defendant Reynolds & Co.

WYATT, District Judge.

This motion is by defendant Reynolds & Co. for an order dismissing the third, fourth and fifth counts of the amended complaint for failure to state a claim upon which relief can be granted (Fed. R.Civ.P. 12(b) (6)) or in the alternative for an order requiring plaintiff to make a more definite statement of these counts (Fed.R.Civ.P. 12(e)).

### The Third Count.

Plaintiff alleges that on April 10, 1961 he bought 1,000 shares of Atlantic Refining common stock through "his broker" Merrill Lynch; that he borrowed a substantial part of the purchase price from First Discount; that there was an agreement under which North Jersey Trust would take delivery of the 1,000 Atlantic Refining shares from Merrill Lynch and would hold such shares for plaintiff and as collateral for the loan to him by First Discount; that on April 10, 1961 (the date of plaintiff's purchase) First Discount sold the 1,000 Atlantic Refining shares through the moving defendant Reynolds & Co.; that on or about May 22, 1961 Merrill Lynch actually delivered the 1,000 Atlantic Refining shares to North Jersey Trust for plaintiff's account; that North Jersey Trust on the same date wrongfully delivered the 1,000 shares to First Discount or to Reynolds & Co.; that Reynolds & Co. had knowledge of all the other facts alleged; that by accepting delivery of the 1,000 shares 42 days after execution of their sale, Reynolds & Co. violated Section 7(c) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78g(c)) and Regulation T of the Board of Governors of the Federal Reserve System; that these violations caused damage to plaintiff, who is also entitled to punitive damages.

The customer of Reynolds & Co. was First Discount, and not plaintiff. Indeed there are no transactions alleged between plaintiff and Reynolds & Co.

The damage done to plaintiff was caused by the wrongful act of North Jersey Trust in turning over the shares to First Discount and by the wrongful act of First Discount in selling and delivering the shares. There is no clear statement that the shares were ever delivered to Reynolds & Co. The complaint, paragraph 19, avers that they were delivered "to First Discount and/or to Reynolds & Co.". This does not aver delivery to Reynolds & Co. In paragraphs 39 and 40 such delivery appears to be alleged in an indirect fashion and will be assumed for purposes of this motion.

The third count, however, is not based on conversion or the like but entirely on an alleged violation by Reynolds & Co. of 15 U.S.C.A. § 78g(c) and Regulation T. These deal with credit transactions between brokers and their customers, the so-called margin requirements.

It is not easy to determine whether a violation is alleged. The theory of plaintiff seems to be, that First Discount was operating with Reynolds through a "special cash account" and that sale of 1,000 Atlantic Refining shares could not be made by Reynolds & Co. on April 10, 1961 because First Discount did not own the shares and did not, and could not, make an agreement in good faith "promptly" to deposit the shares in the account (Regulation T, 12 C.F.R. 220.4 (c)).

The course of dealing and state of accounts between First Discount and Reynolds & Co. are not alleged and without these it seems impossible to tell whether there was a violation of Regulation T or not. The "special cash account" provisions may not be the only provisions applicable.

It will be assumed that the complaint sufficiently alleges a violation. The third count is defective nonetheless because in my opinion (a) there is no right of action for violation of Section 7(c) except by a customer of the broker, (b) there is no causal connection between the alleged violation and damage

to plaintiff and (c) there can be no recovery of punitive damages.

Although there is no provision for a civil action for violation of Section 7(c), the Courts have permitted such actions. Smith v. Bear, 237 F.2d 79, 88 (2d Cir. 1956); Goldenberg v. Bache and Co., 270 F.2d 675 (5th Cir. 1959); Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (D.Mass.1949); Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y.1961).

The principle of these decisions is that Section 7(c) was passed for the benefit of customers and that a member of the class to be benefited can have a private action for violation of the statute. In each of the cited cases, the plaintiff was a customer of the defendant broker. In Smith v. Bear, above, the Court said:

"If a broker or dealer * * * extends credit to a customer in violation of the Act or the regulations promulgated pursuant thereto, all to induce a customer to purchase securities, then the broker has violated the law and *the customer* may recover from him any loss proximately resulting therefrom." (237 F.2d at 87–88; emphasis supplied.)

In Remar v. Clayton Securities Corp., above, the Court said:

"The Securities and Exchange Act does not expressly give a right or remedy to a private person injured by § 7(c) of that Act. But such a right may nonetheless be implied. * * * Broadly stated, the rule is that where defendant's violation of a prohibitory statute has caused injury to plaintiff the latter has a right of action if one of the purposes of the enactment was to protect individual interests like the plaintiff's.

"That rule applies *to the case at* bar. Undoubtedly 'the main purpose' of § 7 of the Securities and Exchange Act was 'to give a government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market.' House Com.Rep. 73rd Cong., 2nd Sess. No. 1383. But Congress recognized that 'protection of the small speculator by making it impossible for him to spread himself too thin * * * will be achieved as a byproduct of the main purpose.' Ibid. In short, the intent of the enactment was in part to protect an individual like plaintiff from losing his equities in stocks pledged to a broker, dealer or bank, due to his having a lower margin than the level approved by the Federal Reserve Board."

Professor Loss has this to say:

"More recently there have been several cases in which the courts have sustained *a customer's* right to sue his broker (together with a bank in one case) for damages allegedly resulting from overextension of credit in violation of the margin regulations. The courts applied the common law tort doctrine which supplies a remedy based on violation of a statute passed for the plaintiff's benefit." Loss, Securities Regulation, second ed., pp. 1263–1264. (Emphasis supplied.)

There was no customer-broker relation between plaintiff and Reynolds & Co.; so far as Reynolds & Co. were concerned plaintiff was not a member of the class protected by the statute; he was a member of the general public, a stranger to the transaction. I conclude, therefore, that plaintiff can have no claim against Reynolds & Co. based on alleged violation of Section 7(c) of the Act and Regulation T.

■ It would also appear that in any event there is no causal connection between the alleged violation and the damage to plaintiff. It was not extension of credit to First Discount which affected plaintiff; it was the wrongful act of North Jersey Trust and First Discount in delivering away the 1,000 shares which, according to the complaint, were to have been kept for plaintiff. .

■ There can be no recovery of punitive damages for violation of the Securities Exchange Act of 1934. It has been so held, 216 F.Supp. 469, on a motion in the case at bar made by defendant Merrill Lynch.

### The Fourth Count.

■ The facts are as alleged in the third count but the basis of liability is said to be the acts of all the defendants done in pursuance of a conspiracy among them.

This fourth count does seem to allege a good cause of action for a conversion of plaintiff's 1,000 shares of Atlantic Refining and participation therein by all defendants with full knowledge. Unlike the third and fifth counts, however, this fourth count does not seem to depend on federal law or on any alleged violation of any law of the United States. It seems to be a cause of action created either by New York or New Jersey law and fully enforceable in the courts of those states.

Since the third and fifth counts are being dismissed as against defendant Reynolds & Co. for insufficiency, it does not appear proper, from a jurisdictional standpoint, to retain the fourth count in this Court as against defendant Reynolds & Co.

As I read the fourth count, any averments of federal law are at best incidental and at worst surplusage. The gist of the action is conversion, a violation of state created rights; the controversy over such rights is "basic" and any questions of Federal law would be "collateral". Gully v. First National Bank, 299 U.S. 109 at 118, 57 S.Ct. 96, at 100, 81 L.Ed. 70 (1936). See also Howard v. Furst, 238 F.2d 790 (2d Cir. 1956).

Since there are no averments of diversity of citizenship and since the fourth count is not one which "arises under" a law of the United States (28 U.S.C.A. § 1331(a)), there must be a dismissal for lack of jurisdiction over the subject matter.

### The Fifth Count.

The facts are as alleged in the third count, with the addition of charges of conspiracy among the several defendants and "a course of dealing which has operated as a fraud and deceit upon the plaintiff".

This fifth count is based on an asserted violation of Section 10(b) of the Act (15 U.S.C.A. § 78j) and of Rule X–10 B–5 of the Commission (17 CFR § 240.-10b–5).

Section 10(b) makes unlawful the use in connection with the purchase of a security of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe".

Rule X–10 B–5 prohibits (among other things) "any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."

The "fraud or deceit" on which plaintiff relies was in connection with his purchase on or about April 10, 1961 of 1,000 shares of Atlantic Refining stock (complaint, par. 48).

■■ The kind of "fraud or deceit" reached by the Rule is that which induces the purchase by plaintiff—misrepresentations, half-truths, or non-disclosure, and in this case these would necessarily be connected with the business and affairs of Atlantic Refining. The complaint alleges nothing of this sort; indeed, all of the acts charged to defendant Reynolds & Co. took place *after* plaintiff had bought the 1,000 shares of Atlantic Refining and he could not have relied on any of these in making his purchase. Defendant Reynolds & Co. had nothing whatever to do with the decision of plaintiff to make the purchase.

Moreover there is no "semblance of privity" between plaintiff and defendant Reynolds & Co. Joseph v. Farnsworth Radio & T. Corp., 99 F.Supp. 701 (S.D. N.Y. 1951), affirmed 198 F.2d 883 (2d Cir. 1953). Plaintiff did not purchase the shares from or through defendant Reynolds & Co. nor is anything alleged

to show that defendant Reynolds & Co. ever knew that anything it did or said, or failed to do or say, would influence plaintiff to buy 1,000 shares of Atlantic Refining.

Motion granted. The third and fifth causes of action of the amended complaint are dismissed as against defendant Reynolds & Co. for failure to state a claim upon which relief can be granted; the fourth cause of action of the amended complaint is dismissed against defendant Reynolds & Co. for lack of jurisdiction over the subject matter.

So ordered.