**Ralph COOPER, Plaintiff,**

v.

The **NORTH JERSEY TRUST COMPANY OF RIDGEWOOD, NEW JERSEY,** Inc. and **Robert M. Gardiner, et al.,** individually and as co-partners, Defendants.

United States District Court
S. D. New York.
March 2, 1964.

Hoeniger & Rozen, New York City, for plaintiff; Berthold H. Hoeniger, New York City, of counsel.

Maurice, McNamee & White, New York City, Attorneys for Defendant The North Jersey Trust Company, Stewart Maurice, and Charles R. McNamee, New York City, of counsel.

FEINBERG, District Judge.

Defendant The North Jersey Trust Company ("Trust Co.") brings this mo-

tion to dismiss the action against it for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, lack of personal jurisdiction, and improper venue. Plaintiff, a New York citizen, is suing Trust Co., a New Jersey corporation, having a principal place of business in Ridgewood, New Jersey, and certain partners of Reynolds & Co., a stockbrokerage co-partnership, doing business in the Southern District of New York. The partners sued are all citizens of states other than New York.[1]

According to the complaint, between September 1960 and April 1961, First Discount Corporation ("Discount")[2] made loans to plaintiff within the Southern District of New York, aggregating $77,435, to finance purchases of securities registered on a national exchange, and it was then "understood, arranged and agreed" among plaintiff, Discount, and Trust Co. that some of the shares purchased by plaintiff would be delivered to Trust Co. to be held as collateral for the loans made by Discount, and that Trust Co. would pay plaintiff's broker from Discount's account for the shares. It is further claimed that Trust Co. made loans to Discount to finance its operations. Pursuant to the arrangement, the shares of stock were delivered to Trust Co., and thereafter, Trust Co., at the request of Discount, wrongfully sold the shares through the New Jersey office of Reynolds & Co., resulting in a claimed loss to plaintiff of $110,875, plus $6,253.15 in dividends up to the filing of the complaint. It is alleged that the acts of Trust Co., Reynolds & Co., and Discount resulted from an "understanding, agreement or conspiracy" among them to enable Discount or its principals to convert the securities of plaintiff.

Numerous legal theories for relief, both under federal and state law, are set forth in the complaint. It is alleged that: (1) Trust Co.'s arrangement with Discount violated Section 7 of the Securities Exchange Act of 1934 (the "Act"), 15 U.S. C. § 78g; (2) the acts and conduct of Trust Co. constituted a manipulative or deceptive device or contrivance in violation of Section 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder ("Rule 10b–5"), subdivision (3); (3) the acts and conduct of Trust Co. were a device, scheme or artifice to defraud plaintiff in violation of Section 10(b) of the Act, 15 U.S.C. § 78j(b), Rule 10b–5(1), and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); (4) Trust Co. transported stolen securities in interstate commerce in violation of 18 U.S.C. § 2314; (5) the acts of defendants were committed pursuant to a conspiracy; (6) the acts and conduct of Trust Co. constituted a breach of its understanding and agreement with plaintiff, a breach of its fiduciary duty, or alternatively were negligent; and (7) Trust Co. converted plaintiff's securities.

■ Defendant asserts in its notice of motion that this Court lacks subject matter jurisdiction over all these theories for relief. However, the Court does have subject matter jurisdiction of the first four claims in order to decide whether the allegations in the complaint state a claim for which relief can be granted since relief is sought under laws of the United States. Bell v. Hood, 327 U.S. 678, 681–82, 66 S.Ct. 773, 90 L.Ed. 939 (1946); see Note, Implying Civil Reme-

1. For purposes of this opinion this group of defendants will be collectively referred to as Reynolds & Co.

2. First Discount Corporation, now insolvent and in receivership in this Court, was a factor engaged in making loans for security purchases. For a description of its activities, see In the Matter of Sutro Bros. & Co., CCH Fed.Sec.L.Rep. ¶ 76,913 (SEC Release No. 7052, April 10, 1963). An indictment has resulted from the activi-

ties of Discount against its officials, an official of Trust Co., and the manager of the Ridgewood office of Reynolds & Co. Other customers of Discount have brought actions in this Court, the United States District Court in New Jersey, and state courts in both New York and New Jersey. The actions in this Court are Meisel v. No. Jersey Trust Co., D.C., 218 F.Supp. 274; Harper-Malone v. Baker, 62 Civ. 1964; Warshow v. H. Hentz & Co., D.C., 199 F.Supp. 581.

dies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285, 287–89 (1963). Subject matter jurisdiction over the remaining claims, which are common-law claims, will be discussed below.

## I

Plaintiff's first theory for relief against Trust Co. is based upon an alleged violation of Section 7(d) of the Act, 15 U.S.C. § 78g(d) and Regulation U, 12 C.F.R. 221.1, thereunder. This section makes it unlawful for any person to extend credit for the purpose of purchasing stock registered on a national exchange in contravention of regulations laid down by the Federal Reserve Board. Regulation U, 12 C.F.R. 221.1(a) provides:

> "No bank shall make any loan secured directly or indirectly by any stock for the purpose of purchasing or carrying any stock registered on a national securities exchange * * * in an amount exceeding the maximum loan value * * * as prescribed from time to time for stocks. * * * "

Section 221.3(q) of the same regulation provides:

> "Any loan to a person not subject to * * * [Regulation U—banks] or to * * * [Regulation T—members of national securities exchanges, brokers and dealers] engaged principally, or as one of the person's important activities, in the business of making loans for the purpose of purchasing or carrying stocks registered on a national securities exchange, is a loan for the purpose of purchasing or carrying stocks so registered. * * * Any loan to any such borrower * * * is a loan 'subject to § 221.1' regardless of whether or not the loan is secured by any stock * * *."

■■ Construing the complaint in the light most favorable to plaintiff, it alleges that Discount was not subject to Regulations T and U, was engaged in making loans for the purpose of purchasing stock registered on a national exchange, and that the loan to it by Trust Co. was in furtherance of that purpose.[3] Thus, a loan by Trust Co. to Discount would violate Regulation U. The courts have implied a civil remedy for violations of Section 7 of the Act under which Regulation U was promulgated. Goldenberg v. Bache and Co., 270 F.2d 675 (5 Cir. 1959); Smith v. Bear, 237 F.2d 79, 88, 60 A.L.R.2d 1119 (2 Cir. 1956); Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D. N.Y.1961); Appel v. Levine, 85 F.Supp. 240 (S.D.N.Y.1948); Remar v. Clayton Sec. Corp., 81 F.Supp. 1014 (D.Mass. 1949).

■■ Trust Co. argues that no relief can be granted as a matter of law under this theory because: (1) the complaint merely avers that plaintiff was injured "as a result of the wrongful acts and conduct" of Trust Co.; (2) the complaint is uncertain in that it alleges that it was "understood, arranged and agreed" that Trust Co. was to hold the stock of plaintiff; (3) the complaint is uncertain in that it alleges Trust Co. "knew or had reason to know" the stock belonged to plaintiff; (4) the complaint merely alleges that Trust Co. had "reason to know" that the arrangements with Discount violated Section 7 of the Act.[4] As to the first and fourth contentions, the complaint alleges that Trust Co. "knew or had reason to know that its arrangements with First Discount Corporation * * * violated Section 7" of the Act,[5] and the arrangements referred to are described as follows: certain of the shares purchased by plaintiff would be delivered to Trust Co. by plaintiff's broker; Trust Co. would pay to the broker for the account of Discount money which Discount had agreed to lend plaintiff to enable him to purchase the shares; and

---

3. Complaint, para. 3.

4. Memorandum on Behalf of Defendant North Jersey Trust Company, pp. 29–36 [hereinafter "Brief of Trust Co."].

5. Complaint, para. 9.

Trust Co. would hold the shares as collateral for the loans made by Discount.[6] Although this language does not unmistakeably allege a loan from Trust Co. to Discount, it was clearly stated upon argument of the motion that the complaint was so meant to allege [7] and it will be construed accordingly. The complaint thus alleges a violation of the statutory provision. As to defendant's points two and three, whatever ambiguity there is in the complaint can be clarified through use of appropriate motions or discovery procedures.[8] Defendant makes no other arguments in support of its motion to dismiss plaintiff's first theory for relief and, accordingly, the motion is denied.[9]

## II

Plaintiff's second and third theories will be discussed together. They are based upon Section 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b–5.[10] Section 10(b) of the Act, *inter alia*, makes unlawful the use of any instrumentality of interstate commerce or any facility of a national securities exchange to work any manipulative or deceptive devices or contrivances, in connection with the purchase or sale of any security, that contravene a rule or regulation of the Securities and Exchange Commission ("SEC"). Rule 10b–5 provides that:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange

(1) to employ any device, scheme, or artifice to defraud,

\* \* \* \* \* \*

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

Plaintiff's second theory for recovery is that violation of subsection (1) of Rule 10b–5 is a basis for civil recovery and Trust Co. violated the subsection. Plaintiff's third theory similarly rests upon an alleged violation of subsection (3) of the Rule. Essentially plaintiff alleges that certain loans were made to him for the "express purpose of enabling \* \* \* [him] to purchase securities. \* \* \*,"[11] that Trust Co. knew [12] that Discount was dealing with it to effectuate a wrongful conversion and sale,[13] and that "the acts and conduct aforesaid on the part of defendants were done pursuant to an understanding, agreement, or conspiracy" [14] among Trust Co., Reynolds & Co., and Discount. Thus, construing the complaint broadly, there is alleged a scheme whereby loans were extended to plaintiff with the design of taking the stock so purchased. There is no wrongdoing alleged affecting the value of the stock itself which was bought

6. Complaint, para. 6.

7. See also Plaintiff's Memorandum in Opposition to Defendant Trust Company's Motion to Dismiss, p. 21 [hereinafter "Plaintiff's Memorandum"].

8. Defendant makes the same argument as to ambiguity regarding plaintiff's second and third legal theories discussed in Part II *infra*. The ruling of the Court is the same on the motion to dismiss directed against those theories, as well, on the basis of ambiguity.

9. Query whether (a) plaintiff was injured from a hazard at which § 7 of the Act and Regulation U are aimed, Restatement, Torts § 286(c); 2 Harper and James, Torts 1003–05 (1956); (b) such an issue should be decided on a motion to dismiss or at trial in the context of proximate cause. Cf. Warshow v. H. Hentz & Co., 199 F.Supp. 581 (S.D.N.Y.1961); Appel v. Levine, 85 F.Supp. 240 (S.D.N.Y. 1948); but see Meisel v. No. Jersey Trust Co., 218 F.Supp. 274, 277 (S.D. N.Y.1963).

10. The complaint also alleges a violation of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). It is unnecessary to deal with this contention.

11. Complaint, para. 4.

12. "Should have known" is also alleged. There is no occasion now to rule on whether constructive knowledge is enough to violate the rule.

13. Complaint, para. 13.

14. Complaint, para. 43.

with the loan. Whether the above conduct violates Rule 10b–5 is a question not free from doubt.

In a number of cases, the SEC has revoked the registration of brokers who converted money entrusted to them for the purpose of buying stock, or who sold a customer's stock and diverted the proceeds to their own pockets. In these proceedings, such activity has been consistently viewed by the SEC as a violation of Section 10(b) and Rule 10b–5. Calvert Sec. Corp., 35 SEC 141 (1953); W. F. Coley & Co., 31 SEC 722 (1950); D. S. Waddy & Co., 30 SEC 367 (1949). In SEC v. Kelly, CCH Fed. Sec. L.Rep. ¶ 90,497 (N.D.Ill.1951), the Court found a violation of Section 10(b) and Rule 10b–5 where it appeared that the defendant broker took money from customers for security purchases and used it for his own benefit. See also S.E.C. v. Lawson, 24 F.Supp. 360 (D.Md.1938) (conversion of customer's securities by broker defendant violated Section 17 of the Securities Act of 1933); see generally 2 Loss, Securities Regulation 1185–86 n. 9, 1200 n. 41 (1961).

 Although the Supreme Court has not yet ruled on whether there is civil liability for violations of Section 10(b) and Rule 10b–5, the lower federal courts have allowed civil recovery. The plaintiff who seeks to recover under Section 10(b) must be either a purchaser or a seller of stock. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); New Park Mining Co. v. Cranmer, 225 F.Supp. 261 (S.D.N.Y.1963). Plaintiff sues here as a purchaser. Actions by purchasers have been allowed against third parties even though not in strict privity. Errion v. Connell, 236 F.2d 447 (9 Cir. 1956); Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2 Cir. 1951); Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.

N.Y.1963); Cochran v. Channing Corp., 211 F.Supp. 239 (S.D.N.Y.1962); H. L. Green Co. v. Childree, 185 F.Supp. 95 (S.D.N.Y.1960); but see Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701 (S.D.N.Y.1951), aff'd per curiam, 198 F.2d 883 (2 Cir. 1952). See generally 3 Loss, Securities Regulation 1767–71 (1961). Lack of any specific misstatement does not preclude relief under Section 10(b). Cochran v. Channing Corp., supra.

 The main problem concerning these theories for recovery, not explicitly raised by defendant in its brief or argument, is whether Rule 10b–5 is limited to the situation in which the purchaser receives something less than he paid for directly from the sale. In other words, does the Rule cover the case in which the purchase of stock is a vital aspect of a continuing scheme and plaintiff received his full value for the stock purchased, but ultimately retained nothing as a result of the fraudulent arrangement? The language in Rule 10b–5 makes unlawful a "device, scheme or artifice to defraud" or an "act, practice, or course of business which operates * * * as a fraud or deceit upon any person, *in connection with* the purchase or sale of any security." (Emphasis added.) The language of Section 10(b) is similarly broad, rendering unlawful various acts *"in connection with* the purchase or sale of any security." (Emphasis added.) In the face of this broad language and the intent of the Act and Rule to protect investors,[15] I conclude that the outlawed activity is not limited to the portion of the transaction involving an exchange of consideration by the purchaser for the stock. The Rule also covers an entire transaction aimed at extracting money from the purchaser through a loan, which, by hypothesis, violated the Act,[16] to finance a stock purchase with the ultimate intent of converting the stock so purchased.[17]

15. Wilko v. Swan, 346 U.S. 427, 430–31, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

16. See Part I supra.

17. But see Meisel v. No. Jersey Trust Co., 218 F.Supp. 274, 278 (S.D.N.Y.1963).

Accordingly, defendant's motion to dismiss those claims based upon violations of Section 10(b) of the Act and Rule 10b-5 is denied.

### III

Plaintiff's fourth theory for relief is based upon that portion of 18 U.S.C. § 2314, which provides:

> "Whoever transports in interstate or foreign commerce any * * * securities * * * of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud;

> * * * * * *

> "Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both."

Although plaintiff concedes that he has not found any case raising the issue of whether there is a private right of action based on this section, he argues that the Court should imply one "since plaintiff obviously is a member of the class which Congress particularly sought to protect * * *."[18]

The problem of when a civil remedy should be implied from a federal statute which does not explicitly provide for one is difficult. The cases holding that civil suits can be brought under various sections of the securities acts that are silent on the question are good examples of such implication.[19] See also Reitmeister v. Reitmeister, 162 F.2d 691 (2 Cir. 1947) (Section 605 of the Federal Communications Act, 47 U.S.C. § 605 imposes civil as well as criminal liability for "publishing" an intercepted telephone message). The criteria to be applied in resolving the issue are unclear. It has been suggested [20] that, in addition to the orthodox search for legislative intent, some of the factors to be considered are: whether effective state remedies for the conduct proscribed are available; whether there is a congressional policy favoring uniformity of remedy; and whether the relief sought should be available only in the federal courts. Another formulation of the test is whether the statute is enacted for the protection of a specified class or whether it is designed exclusively to protect the interests of the state, as such, or to protect the public generally.[21]

The legislative history of the section in question indicates that it was designed to implement federal-state cooperation in apprehending and punishing criminals.[22] While hardly conclusive, the history does not suggest that a new federal civil right was being created.[23] The section was originally enacted some twenty years ago and is one of a number of criminal statutes dealing with stolen property in interstate commerce; e. g., stolen vehicles, 18 U.S.C. § 2312.[24]

---

18. Plaintiff's Memorandum, p. 25.

19. E. g., Kardon v. National Gypsum Co., D.C., 73 F.Supp. 798, modified, 83 F.Supp. 613 (E.D.Pa.1947); Remar v. Clayton Sec. Corp., 81 F.Supp. 1014 (D.Mass. 1949).

20. See Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285 passim.

21. See Reitmeister v. Reitmeister, supra at 694 of 162 F.2d; cf. Restatement, Torts § 288.

22. Cf. United States v. Sheridan, 329 U.S. 379, 387, 67 S.Ct. 332, 336, 91 L.Ed. 359 (1946). In a report on a bill similar to the section which finally passed, the House Judiciary Committee stated:
 "Most of the States have laws covering the underlying principle of this proposed legislation, but it must be re-membered that the jurisdiction of the State court does not reach into all of the States, especially when the matter of producing witnesses and bringing to the court the proof is concerned [sic]" H.R.Rep. No. 2528, 70th Cong., 2d Sess. 2 (1929).

23. See the following reports: H.R.Rep. No. 2528, 70th Cong., 2d Sess. (1929); H.R.Rep. No. 1462, 73d Cong., 2d Sess. (1934); S.Rep. No. 538, 73d Cong., 2d Sess. (1934); H.R.Rep. No. 1599, 73d Cong., 2d Sess. (1934); H.R.Rep. No. 422, 76th Cong., 1st Sess. (1939); S. Rep. No. 674, 76th Cong., 1st Sess. (1939); S.Rep. No. 303, 81st Cong., 1st Sess. (1949); H.R.Rep. No. 352, 81st Cong., 1st Sess. (1949) (interstate swindles), U.S.Code Congressional Service 1949, p. 1248.

24. Cf. 18 U.S.C. §§ 2311–2317.

There do not appear to be any cases holding, or even suggesting, that these statutes create a federal civil right under which the person whose goods were stolen can sue.

The statute differentiates between stolen securities worth $5,000 and those of lesser value. Such a distinction may be justified by reasons peculiar to federal criminal law enforcement;[25] e. g., the statute is aimed at apprehending major criminals, but has little to commend it if used as a basis for implying a civil remedy for a protected class.

█ In view of the lack of precedent under this and similar federal statutes, the existence of state civil remedies for the taking of property, the indications in the legislative history of limited purpose, and the extension of civil jurisdiction that accepting plaintiff's novel assertion would imply, I hold that no civil right is created by 18 U.S.C. § 2314. Accordingly, defendant's motion to dismiss this theory for relief is granted.

## IV

█ Having dealt with defendant's attacks on plaintiff's claims which are concededly federal in nature, the next most important issue raised by the motion to dismiss is whether this Court has acquired personal jurisdiction over Trust Co. with regard to the non-federal theories for relief. There is no dispute that the only service made upon Trust Co. was extra-territorial service in New Jersey under Section 27 of the Act, 15 U.S.C. § 78aa. The question raised is whether such service gives the Court personal jurisdiction over Trust Co. to grant the relief sought under the non-security act legal theories for relief—the claims alleging conversion, breach of fiduciary duty, and negligence.[26] The District Courts which have considered this question appear to be in disagreement, though the majority of these decisions deny such jurisdiction. International Ladies' Garment Workers' Union v. Shields & Co., 209 F.Supp. 145 (S.D.N.Y.1962); Kappus v. Western Hills Oil, Inc., 24 F.R.D. 123 (E.D.Wis.1959); Jaypen Holdings, Ltd. v. Bellanca Corp., 22 F.R.D. 190 (D.N.J.1958); Lasch v. Antkies, 161 F. Supp. 851 (E.D.Pa.1958). Cases indicating that such jurisdiction is proper are: Townsend Corp. of America v. Davidson, 222 F.Supp. 1 (D.N.J.1963); Collings v. Bush Mfg. Co., 19 F.R.D. 297 (S.D.N.Y.1956) (dictum); Stella v. Kaiser, 82 F.Supp. 301 (S.D.N.Y.1948) (without discussion). If service of Trust Co. were properly made, the Court would have subject matter jurisdiction to grant the relief sought after trial on the non-federal legal theories under the doctrine of pendent jurisdiction, since all of the claims here are but different theories for relief for violation of a single right. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Brown v. Bullock, 194 F.Supp. 207, 220 (S.D.N.Y.), aff'd, 294 F.2d 415 (2 Cir. 1961); International Ladies' Garment Workers' Union v. Shields & Co., supra at 147–48 of 209 F.Supp.

█ Reasons of judicial economy—which justify the judicially created doctrine of pendent jurisdiction—suggest sustaining the service of process as to the

---

25. "It is believed that it would place too great a burden on the Department of Justice to ask it to undertake to apprehend and prosecute every person violating the substantive provisions of such a law without regard to the amount of property involved. The minimum valuations fixed in the bill required to give the Federal Government jurisdiction are the figures asked and recommended by the Attorney General."
H.R.Rep. No. 1462, 73d Cong., 2d Sess. 2 (1934).

26. Theories numbered ten and eleven of the complaint. Plaintiff claims in addition that the Court acquired personal jurisdiction over Trust Co. as to non-federal theories pursuant to the recently enacted § 302 CPLR and Rule 4, Fed.R.Civ.P. However, since "pendent" personal jurisdiction is being allowed, it is unnecessary to discuss the scope of the New York "long-arm" statute.

pendent non-federal claims. See Note, 63 Colum.L.Rev. 762 (1963). The same basic facts will have to be presented on both federal and non-federal theories. Service on the federal claims is proper and defense of these claims must, in any event, be made in this District.

The Court of Appeals for this Circuit had occasion to consider this problem in Schwartz v. Eaton, 264 F.2d 195 (2 Cir. 1959). Suit in the District Court was brought for violation of the Investment Company Act, 15 U.S.C. §§ 80a–1—80a–52, as well as on non-federal grounds. The lower court struck from the complaint the non-federal theories of recovery and quashed service of process as to them, holding that service pursuant to a statute authorizing nationwide service does not give personal jurisdiction over a defendant so served upon pendent theories for recovery. Schwartz v. Bowman, 156 F.Supp. 361, 364–66 (S.D.N.Y. 1957). An appeal from this order of the District Court was dismissed for lack of finality. 264 F.2d at 196. However, the Court of Appeals wrote that (264 F.2d at 197–98):

> "[f]rom every angle the district court's action in attempting to dismiss a part of plaintiff's legal theories appears a nullity. The striking of a portion of the prayer for relief was surely a futile and meaningless gesture. F.R. 54(c) * * *. And the trial judge at the close of the case will still be obligated to grant the parties the relief to which they prove themselves entitled. * * So every consideration of trial convenience for litigants and courts accords with the legal principle pointing to a complete determination of this controversy at one time.

> "We add that we can perceive no additional hardship upon the defendants here in expecting them to defend their actions against claims of violation of state law, as well as for rescission under the federal statute."

Judge Moore concurred in the result, but dissented as to the view that the lower court had personal jurisdiction to decide the non-federal theories.

In an opinion subsequent to Schwartz, Judge Dimock, the author of Schwartz in the District Court, has reiterated his views. International Ladies' Garment Workers' Union v. Shields & Co., supra. Holding that there was pendent subject matter jurisdiction over the non-federal theories, the Court, in distinguishing pendent subject matter jurisdiction from pendent personal jurisdiction, stated that the former "flows of necessity from the conception that there is but a single claim where a single right has been violated." 209 F.Supp. at 148. However, the fact that there is a single claim does not foreclose separate trial on rights to relief created by different sovereigns in the courts of those sovereigns. Interpreting Schwartz as meaning that the action of the District Court was not effective in foreclosing relief on the non-federal theory, the Court in International Ladies' Garment Workers' Union stated that the issue can be limited in the pre-trial order to whether there was a violation only of the federal law.

With all respect, I must disagree. Although the Court in Schwartz indicated as one of its grounds of disapproval of the action in the lower court that full relief must be granted even though not asked for [Fed.R.Civ.P. 54(c)], its objection to the disposition of the issue of pendent personal jurisdiction cannot be cured merely by the device of a pre-trial order. Although much of Schwartz is concededly dictum, the Court indicated that it felt adjudication of the non-federal claims is proper. This is clearly indicated by the discussion of hardship and judicial convenience. Judge Moore's opinion interpreted the language of the majority to mean this.

In the present state of the law, I am inclined to follow the dictum in Schwartz because (1) it indicates the feeling of the Circuit Court, and (2) it conforms with the interests of justice in avoiding

piece-meal litigation.[27] In this respect, the Court notes that the new amendments to Rule 4(f), Fed.R.Civ.P. reflect the policy of judicial economy at the sacrifice of state borders.[28]

Accordingly, insofar as the motion to dismiss alleges lack of personal jurisdiction over the non-federal claims, it will be denied.

### V

■ Trust Co. attacks not only the substance of the claims based upon alleged violations of the Securities Exchange Act of 1934, but also moves to dismiss for improper venue in this District. Venue under the Securities Exchange Act of 1934 is proper in the district "wherein any act or transaction constituting the violation occurred." Section 27 of the Act, 15 U.S.C. § 78aa.[29] The acts or transactions alleged as occurring within this District were the loan by Discount to plaintiff [30] and the sale by Reynolds & Co. of plaintiff's shares through national securities exchanges located within this District. These two acts were part of an allegedly concerted scheme by defendants which violated the Act. Under these circumstances, venue in this District is proper. Hooper v. Mountain States Securities Corp., 282 F.2d 195, 204–05 (5 Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.

2d 693 (1961); Errion v. Connell, 236 F.2d 447, 455 (9 Cir. 1956); Townsend Corp. of America v. Davidson, supra; Thiele v. Shields, 131 F.Supp. 416 (S.D. N.Y.1955).

### VI

■ Finally, defendant urges that claims nine and ten of the complaint are insufficient to allow recovery as a matter of law.[31] The ninth claim alleges that the acts and conduct of Trust Co., Discount, and Reynolds & Co. were committed "pursuant to an understanding, agreement or conspiracy," [32] the object of which was to convert the securities of plaintiff.[33] Defendant argues that the label of conspiracy adds nothing to the charge of wrongs listed in the complaint, and hence is not a separate and independent ground for giving relief.[34] Plaintiff does not dispute Trust Co.'s basic contention that the conspiracy charged here is not in itself a wrong allowing recovery, but has significance only with respect to rules of evidence.[35] Therefore, this claim will be stricken with leave given to plaintiff to file an amended complaint, incorporating in the other claims of the complaint any of the allegations stricken, where plaintiff feels such incorporation would be appropriate. For purposes of the motion to dismiss, the allegations of

27. See also 2 Loss, Securities Regulation 1011–12 (1961); Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963(I), 77 Harv.L.Rev. 601, 634 n. 138 (1964); Note, 73 Harv.L.Rev. 1164, 1175–78 (1960).

28. "[T]he objective of enabling the court to determine entire controversies" is the basic reason for the new amendment to Rule 4(f) allowing in certain situations service to places outside the state which are within one hundred miles from the court. Advisory Committee's Notes, reprinted in Moore, Federal Practice Special Supp. on Rule 4, p. 12 (1963); see Kaplan, supra note 27, at 629–35.

29. Venue is also proper in the district "wherein the defendant is found or is an inhabitant or transacts business * * *." Section 27 of the Act, 15 U.S.C. § 78aa. The parties have asked the Court not to

deal with the issue of whether Trust Co. transacts business within this District, if it is necessary to decide that issue, until they have an opportunity to present further evidence to the Court. For reasons indicated in the text, it is not necessary to decide the issue.

30. Complaint, para. 3.

31. The notice of motion states that the eleventh claim—conversion—should be dismissed as a matter of law. However, no attack on this theory for recovery is made in the briefs and the challenge is apparently abandoned.

32. Complaint, para. 43.

33. Complaint, para. 44.

34. Brief of Trust Co., pp. 23–25.

35. Plaintiff's Memorandum, pp. 25–26.

the ninth claim have been assumed as applying to some of the other claims.[36]

Although the challenge to the tenth claim of plaintiff is denominated as going to its legal sufficiency, it is apparent from Trust Co.'s brief that the only complaint is one of ambiguity.[37] This theory is based on the negligence of Trust Co. or on an alleged breach by Trust Co. of its agreement with plaintiff or breach of its fiduciary obligation to plaintiff. Although the facts are rather sketchy in the complaint, the theories are sufficient to withstand a motion to dismiss.

Submit order on notice in accordance with this opinion.

---

36. E. g., see note 14, supra.

37. Brief of Trust Co., pp. 27–28.