Alice GLICKMAN, Plaintiff,

v.

SCHWEICKART & CO., Defendant.

United States District Court
S. D. New York.

June 22, 1965.

Korotkin & Oppenheim, New York City, for plaintiff, Michael Paul Korotkin, New York City, of counsel.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendant, Richard Conway Casey, New York City, of counsel.

HERLANDS, District Judge.

This is a motion to dismiss made by defendant under Rule 12(b) of the Federal Rules of Civil Procedure.

Plaintiff's amended complaint contains the following relevant allegations, the truth of which must be assumed arguendo for purposes of this motion to dismiss.

### Count I

Defendant is a securities broker and dealer, who has registered with the Securities and Exchange Commission (SEC) pursuant to the Securities Exchange Act of 1934 (hereinafter the 1934 Act) and who is a member of the New York Stock Exchange. In June 1960, defendant suggested that plaintiff purchase shares of common stock in Siegler Corporation, the shares of which were traded on the New York Stock Exchange and registered with the SEC pursuant to the 1934 Act.

Paragraph Ninth of the amended complaint states the following:

NINTH: To induce plaintiff to purchase a greater number of shares of the common stock of SIEGLER than she could purchase for cash within the margin requirements established and at said time in effect pursuant to the Securities Exchange Act of 1934, and by the rules and regulations thereunder, GILMAN [an alleged agent of defendant] suggested and advised that plaintiff "factor" the acquisition of SIEGLER with a lender to be furnished and arranged for by GILMAN, which would enable plaintiff to purchase said stock by posting no cash and less margin than that required by Broker-Dealers and other regulated lenders.

Pursuant to the above suggestion, defendant obtained a loan of $12,000 from the First Discount Corporation, the entire amount necessary to enable plaintiff to purchase 300 shares of Siegler Corporation.

During June or July of 1960, defendant effected the purchase of 300 shares of Siegler Corporation and arranged with First Discount Corporation to furnish all cash necessary for the purchase and further arranged for plaintiff to deposit with First Discount Corporation 200 shares of the common stock of the Standard Oil of California Corporation (CALSO) which shares were delivered to Gilman endorsed in blank, pursuant to his directions.

The 300 shares of Siegler Corporation were delivered by defendant to First Discount Corporation; plaintiff never received the shares of Siegler.

No additional demand for margin was made of plaintiff nor any notice given to plaintiff of the necessity of posting additional margin, although plaintiff was at all times ready and able to post additional margin had any such demand been made of plaintiff or had plaintiff been apprised of the necessity therefor.

Thereafter, sometime during 1961, First Discount Corporation wrongfully converted to its own use the CALSO securities belonging to plaintiff and sold them to a person or persons unknown to plaintiff.

Thereafter, the First Discount Corporation became insolvent; and all of its assets have been dissipated. The 200 shares of CALSO stock belonging to plaintiff, having been sold, are no longer in the possession of the First Discount Corporation.

In arranging the aforesaid credit transaction, defendant wilfully and knowingly violated section 7(c) of the 1934 Act, 48 Stat. 886 (1934), 15 U.S.C. § 78g(c) (1964) and the rules and regulations promulgated thereunder, Regulation T, 12 C.F.R. § 220 (1963), whereby plaintiff suffered injury in the conversion of its CALSO stock.

Plaintiff seeks as damages under Count I, $17,535—$13,850, representing the value of the 200 CALSO shares at or about the time plaintiff learned of their conversion, plus $3,685, representing the value of dividends in cash and stock of which plaintiff was deprived.

### Count II

Based on the claims made under Count I, plaintiff further alleges that, in advising plaintiff to finance through First Discount Corporation, in violation of the 1934 Act, defendant breached a fiduciary duty owed to plaintiff as plaintiff's stock adviser, whereby plaintiff was injured in the amount of $17,535.

### Count III

Count III is a claim based upon common-law fraud, predicated upon the allegations of Paragraph Thirtieth of the amended complaint, as follows:

THIRTIETH: Defendant, through its said agent, GILMAN, who was acting for said defendant within the scope of his authority, did falsely and fraudulently represent to plaintiff that the said arrangement with FIRST DISCOUNT CORPORATION was usual and proper, and that it represented no greater risk to plaintiff than the usual margin transaction and that it was advantageous to plaintiff, and further, did fail to inform plaintiff that said transaction in fact was without the rules and regulations surrounding the securities business and that said "factoring-device" involved burdens and conditions which were more onerous than conventional financing.

Following Paragraph Thirtieth, plaintiff alleges that the false statements were made with knowledge that they were false, with an intention to deceive, that such representations were believed by plaintiff and relied upon by her as inducement to purchase the shares of Siegler Corporation.

Plaintiff also alleges under Count III that defendant "through its continued contact and dealing with FIRST DIS-

COUNT CORPORATION had knowledge, or should have had knowledge of the latter's practices."

The damages sought under Count III are also $17,535.

### Count IV

Count IV substantially relies upon the allegations of Count III as constituting a violation of section 10(b) of the 1934 Act, 48 Stat. 891 (1934), 15 U.S.C. § 78j(b) (1964).

The damages sought under Count IV, as in all other counts, are $17,535.

As to Counts I and IV, jurisdiction is based upon section 27 of the 1934 Act, 48 Stat. 902 (1934), 15 U.S.C. § 78aa (1964). Jurisdiction over Counts II and III is apparently based upon the theory of pendent jurisdiction. There is no claim of diversity of citizenship.

Defendant's motion to dismiss under Rule 12(b) is on the ground that Counts I, III and IV fail to state a claim upon which relief can be granted, for the reason that the court lacks jurisdiction over the subject matter of Counts II and III and for the further reason that Counts I, III and IV are barred by the applicable statute of limitations.

### Count I

Defendant's motion to dismiss Count I is premised on the argument that there is no proximate cause between the mere violation of the margin requirements of section 7(c) of the 1934 Act, and Regulation T promulgated thereunder, and the injury claimed to have resulted therefrom—the conversion of the CALSO stock pledged by plaintiff with First Discount Corporation.

The court would not be willing to say, however, particularly at the pleading stage, that the alleged violation of section 7(c) of the 1934 Act and Regulation T was not the proximate cause of the injuries claimed if it was one of the purposes of section 7 or Regulation T to protect investors against the acts—including conversion—of irresponsible financing institutions of the kind that

would make it a regular part of their business to subsidize violations of the margin requirements established pursuant to the 1934 Act.

The relevant inquiry, insofar as Count I is concerned, is not one of proximate cause, but whether the "harm suffered * * * [is] of the kind which the statute [section 7(c) of the 1934 Act] was intended, in general, to prevent." Prosser, Torts 196 (3d ed. 1964). If it was, then the question of proximate cause would be a question of fact for the jury to determine at trial and defendant's motion would have to be denied. If it was not, then the question of proximate cause is never reached and defendant's motion, insofar as Count I is concerned, would have to be granted.

As was stated by Judge Wyzanski in Remar v. Clayton Sec. Corp., 81 F.Supp. 1014, 1017 (D.Mass.1949):

> Undoubtedly "the main purpose" of § 7 of the Securities and Exchange Act was "to give a government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market." House Com.Rep. 73rd Cong., 2nd Sess. No. 1383. But Congress recognized that "protection of the small speculator by making it impossible for him to spread himself too thin * * * will be achieved as a by-product of the main purpose." Ibid. In short, the intent of the enactment was in part to protect an individual like plaintiff from losing his equities in stocks pledged to a broker, dealer or bank, due to his having a lower margin than the level approved by the Federal Reserve Board.

Accord, Meisel v. North Jersey Trust Co., Civil No. 62–4106, at 2, S.D.N.Y., Feb. 1, 1965; Meisel v. North Jersey Trust Co., 218 F.Supp. 274, 277 (S.D. N.Y.1963) (dictum); Reader v. Hirsch & Co., 197 F.Supp. 111, 114–15 (S.D. N.Y.1961); see 2 Loss, Securities Regulation 1263–64 (2d ed. 1961).

Thus, the only harm which section 7(c) of the 1934 Act was designed, generally, to prevent was that which might befall an investor should he "spread himself too thin" and should the market fall, resulting either in the loss of pledged security or subjection to suit for inability to pay back loans.

Conversion of the pledged stock by the financing institution, however, was not the type of risk covered by section 7(c) of the 1934 Act, see Cooper v. North Jersey Trust Co., 226 F.Supp. 972, 977 n. 9 (S.D.N.Y.1964). Count I, based thereon, must therefore be dismissed for failure to state a claim upon which relief can be granted. But see Warshow v. H. Hentz & Co., 199 F.Supp. 581 (S.D.N.Y. 1961).

### Count IV

Interpreting the allegations contained in Count IV most favorably to plaintiff, as the court must on this motion, plaintiff has alleged that defendant, plaintiff's broker, with knowledge of First Discount's questionable financial practices, did knowingly and falsely represent to plaintiff that the means of financing recommended by defendant for plaintiff's purchase of shares of Siegler Corporation was the usual and proper means of financing and represented no greater risk to plaintiff than the usual margin transaction.

If plaintiff is able to prove, at trial, that defendant had actual knowledge either that First Discount engaged in questionable financial operations or that First Discount was, itself, financially unstable, then the conversion of the CALSO stock by First Discount would be within the risk foreseeable as a result of defendant's misrepresentation; and, hence, there is a sufficient showing of proximate cause to withstand defendant's motion to dismiss Count IV.

The more difficult question posed by Count IV is whether the character of the misrepresentation—as to the means of financing the purchase—can provide the predicate for a claim for relief under

section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1964).

In determining this issue, the key words of both section 10(b) and Rule 10b–5 are "in connection with the purchase or sale of any security."

Defendant contends that the quoted language limits the scope of section 10 (b) to cases in which the misrepresentations relate to the subject matter of the purchase itself—the securities.

This same argument, on very similar facts, was made and rejected in the case of Cooper v. North Jersey Trust Co., 226 F.Supp. at 978–79, in which Judge Feinberg held that the limited interpretation of section 10(b), urged by defendant in the case at bar, was unduly restrictive.

■ For the reasons stated by Judge Feinberg in Cooper, and some additional reasons as set out below, this court also holds that the words "in connection with" in section 10(b) need not be limited to misrepresentations relating to the subject matter of the purchase.

In other sections of the federal securities legislation, when Congress wished to limit federal remedies in the manner suggested by defendant, it did so explicitly. E. g., Securities Act of 1933, § 11, 48 Stat. 82 (1933), as amended, 15 U.S.C. § 77k (1964); 1934 Act § 18(a), 48 Stat. 897 (1934), 15 U.S.C. § 78r(a) (1964).

Moreover, the court is not required to hold, in order to sustain Count IV, that all misrepresentations directly connected with a purchase or sale of securities will be sufficient to ground a claim under section 10(b).

In the case at bar, the alleged misrepresentation relates to the financing of a purchase of securities and the misrepresentation was allegedly made by a broker. There is a sufficient nexus, therefore, between federal interests—as articulated in the many sections of the 1934 Act relating to brokers and dealers and acceptable methods of financing—to justify the application of section 10(b) to the facts of this case as a means of providing plaintiff with a federal remedy.

■ Defendant contends, however, that plaintiff's claim under section 10(b) is governed by a three-year statute of limitations which had already run at the time this suit was commenced.

A claim under section 10(b), brought in a federal court sitting in New York, is governed by New York's six-year statute of limitations applicable to actions based upon fraud, formerly CPA § 48 (5), now CPLR § 213(6). E. g., Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951); Phillip v. J. H. Lederer Co., CCH Fed.Sec.L.Rep. ¶ 91039 (S.D.N.Y.1961); see 3 Loss, op. cit. supra at 1774; Fleischer, "Federal Corporation Law": An Assessment, 78 Harv. L.Rev. 1146, 1153 (1965); Note, 74 Yale L.J. 658, 685–86 & n. 103 (1965). Defendant's argument, therefore, is without merit. This action was timely brought.

Defendant's motion to dismiss Count IV is denied.

### Count III

■ A mere reading of Counts III and IV shows that plaintiff relies upon virtually the same factual allegations made in Count III as the basis for her claim under Count IV.

As a matter of fact, should plaintiff have brought her claim under Count III in a state court and should she have then suffered an adverse decision on the merits, she would be precluded, because of res judicata, from thereafter asserting her claim under Count IV in a federal court. When there is such identity there can be no doubt that Counts III and IV merely allege two grounds in support of the same cause of action within the meaning of Hurn v. Oursler, 289 U.S. 238, 245–46, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). This court accordingly has jurisdiction over the subject matter of

the claim asserted in Count III, under the theory of pendent jurisdiction.

### Count II

A more troublesome question is whether jurisdiction over the subject matter of the claims made in Counts III and IV —for fraud—is sufficient to give this court pendent jurisdiction over the subject matter of the claim made in Count II—for breach of a fiduciary duty.

It may be argued that claims for fraud and claims for breach of a fiduciary duty represent separate and distinct causes of action and that, therefore, the latter claim—that appearing in Count II—must be dismissed. To do so, however, would be to state the ultimate conclusion without meeting and answering the "ultimate inquiry": would there be "a substantial commitment of federal judicial resources to the nonfederal claim at the time the federal claim is decided so that remittance of the nonfederal claim to a state court would occasion a senseless duplication of judicial and litigant effort?" Note, 62 Colum.L.Rev. 1018, 1044 (1962).

The above-cited Note suggests, at 1046, that in answering the inquiry, above, the courts should employ "a flexible substantial overlapping of actual proof standard."

Adhering to that standard, this court, while recognizing the difficulty of the problem now before it, believes that it would be far better to defer the ultimate decision—as to whether Count II can survive under pendent jurisdiction—at least until the parties have had an opportunity to conduct pretrial discovery and the degree of the potential overlapping of actual proof can be better ascertained. See id. at 1047.

Defendant's motion to dismiss Count I of the amended complaint is hereby granted.

Defendant's motion to dismiss Counts II, III and IV of the amended complaint is hereby denied.

So ordered.