**Sidney BENDER, Plaintiff,**

**v.**

**NEW ZEALAND BANK & TRUST (BAHAMAS) LTD. et al., Defendants.**

**No. 65 Civ. 2208.**

United States District Court, S. D. New York.

April 19, 1974.

---

Sidney Bender, pro se.

Shearman & Sterling by J. Robert Lunney, New York City, for defendants Bank of Montreal and Bank of London & Montreal, Ltd.

*Memorandum Opinion and Order*

MOTLEY, District Judge.

Plaintiff has brought this action for damages under various provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. He also seeks relief under New York law, pursuant to this court's pendent jurisdiction.

A judgment by default has been entered against defendant New Zealand Bank & Trust (Bahamas). The action has been settled as to defendants Jessup & Lamont, Arawak Trust Co., Ltd., Goldman Sachs & Co., Brown Bros. Harriman & Co., and Miller.

Defendants Bank of Montreal with an office located in New York City and its subsidiary Bank of London & Montreal, Ltd., located in Nassau, Bahamas, now move for summary judgment.

The motion is denied for the following reasons.

Plaintiff, a lawyer, is a citizen of New York, appearing pro se in this action. He alleges that on July 24, 1964, New Zealand Bank & Trust (Bahamas) Ltd. (hereinafter "New Zealand") loaned him $87,750 to finance purchases of securities registered on a national exchange, to wit, 4,000 Trans World Airlines (TWA) warrants. According to the complaint, it was then "understood, arranged and agreed" among defendants New Zealand Bank, Bank of Montreal and plaintiff that the warrants owned by plaintiff would be delivered to the

Bank of Montreal here in New York City for the account of New Zealand to be held as collateral for the loans made by New Zealand and that Bank of Montreal would make part payment to plaintiff's broker from New Zealand's account for the warrants. Plaintiff asserts that at the time of the transaction, the warrants had a fair market value in excess of $112,000.00.

It is further claimed that Bank of Montreal and J. H. Crang & Co. (Crang), a broker dealer, made loans to New Zealand enabling New Zealand to make the loans to plaintiff. Before the warrants were delivered to Bank of Montreal, Crang sold 4,000 TWA warrants through Jessup & Lamont (Jessup) at the request of New Zealand, although, as plaintiff alleges, Crang knew that New Zealand did not then own or control 4,000 TWA warrants.

Plaintiff further alleges that Bank of London & Montreal, Ltd., a subsidiary of Bank of Montreal, knowingly aided New Zealand in carrying out its scheme. He seeks damages in the amount of $80,000.00.

Plaintiff seeks relief under the following legal theories: 1) the Bank of Montreal violated Section 7(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g(d) and Regulation U, 12 C.F.R. 221.1 thereunder; 2) the acts of defendants constituted a manipulative or deceptive device or contrivance in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder; and 3) defendants were guilty of common law fraud under New York law.

### Regulation U

Plaintiff claims that Bank of Montreal made a loan to New Zealand in violation of Regulation U which provided, during the relevant period, as follows:

"... (a) [N]o bank shall make any loan secured directly or indirectly by any stock for the purpose of purchasing or carrying any stock registered on a national securities exchange ... in an amount exceeding the maximum loan value of the collateral. ..." 12 C.F.R. § 221.1.

The maximum loan value of the collateral in this case was approximately $33,600.00 or 30% of the fair market value of the securities which plaintiff alleges to be in excess of $112,000.00. See 12 C.F.R. § 221.4 (1966 Supp.).

Exceptions were provided for the following:

"(a) Any loan to a bank or to a foreign banking institution;

\*    \*    \*    \*    \*    \*

(f) Any temporary advance to finance the purchase or sale of securities for prompt delivery which is to be repaid in the ordinary course of business upon completion of the transaction: *Provided,* That the advance is not made to a person described in § 221.3(q): *And provided further,* That it is either (1) made to a broker or dealer, or (2) made for a purpose other than to enable the borrower to pay for securities purchased in a special cash account subject to Part 220.4(C) of this Chapter." 12 C.F.R. § 221.2.

█ Plaintiff has a civil remedy for a violation of Regulation U. *Cooper v. North Jersey Trust Co.,* 226 F.Supp. 972 (S.D.N.Y.1964) (Feinberg, J.).

█ Defendants argue, however, that there was no loan involved, that Regulation U is, therefore, inapplicable and that even if there was a loan, the transaction comes within the exceptions set forth above. Whether the Bank of Montreal's transaction with New Zealand should be characterized as a loan is properly a question for the jury. On a motion for summary judgment, the inferences to be drawn from affidiavits and exhibits "must be viewed in the light most favorable to the party opposing the motion." *American Mfrs. M. I. Co. v. American Broadcasting-Para. Th.,* 388 F.2d 272, 279 (2d Cir. 1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

Moreover, defendants have failed to submit affidavits or other evidence showing that the transaction at issue comes within one of the exceptions set forth at p. 640, *supra*.

## Rule 10b–5

██ Plaintiff claims that Bank of Montreal and Bank of London & Montreal, Ltd. are chargeable with knowledge that New Zealand would sell the warrants, pocket the proceeds of the securities to the extent they exceeded the loan and, thereby, deprive plaintiff of his securities and his equity in them. This, according to plaintiff, constituted a manipulative or deceptive device or contrivance in violation of Rule 10b–5.

Moreover, plaintiff claims that defendant Bank of Montreal knowingly made a false statement when it represented that New Zealand had an account with the Bank of Montreal.

Defendants contend, however, that there was nothing fraudulent about New Zealand's conduct since the notes which plaintiff executed authorized it to sell, hypothecate, or commingle the securities. (See Exhibits A and B, attached to Defendants' Motion for Summary Judgment.) However, as defendants concede, the notes also provided that upon payment of all indebtedness by the plaintiff, a like kind and amount of securities would be returned to him. It, therefore, follows that, if New Zealand did not intend to return the warrants to plaintiff, it may have committed a Rule 10b–5 violation.

Defendants further argue that they cannot be held liable for any misdeed on the part of New Zealand since they lacked knowledge that New Zealand did not intend to return the warrants.

As defendants argue, "a party cannot be held liable in a private suit for damages under Rule 10b–5 for mere negligent conduct." *Cohen v. Franchard Corp.*, 478 F.2d 115, 123 (2d Cir. 1973), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106. "The standard for determining liability under Rule 10b–5 essentially is whether plaintiff has established that defendant either knew the material facts that were misstated or omitted and should have realized their significance, or failed or refused to ascertain and disclose such facts when they were readily available to him and he had reasonable grounds to believe that they existed." *Id.*

While defendants' Rule 9(g) statement and the affidavit of Donald Gillies attached to their motion raise doubts about whether plaintiff will be able to prove the *scienter* element of his 10b–5 claim, the court cannot say that defendants have established beyond the "slightest doubt" that plaintiff will not be able to prove his claim on the trial. *Dolgow v. Anderson*, 438 F.2d 825, 830 (2d Cir. 1971).

Moreover, the material allegations in the affidavit do not appear to be based on personal knowledge as required by Rule 56(e), Fed.R.Civ.P.

Finally, the jury might find that Bank of Montreal made a material misrepresentation if it falsely stated that New Zealand had an account.

## Pendent State Claim

██ The elements of plaintiff's common law fraud claim are as follows: representation of a material existing fact, falsity, *scienter*, deception and injury. Plaintiff must show that defendants intended to deprive plaintiff of a benefit and that plaintiff was thereby deceived and damaged. *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833 (1958). No contractual relationship between the parties is required. "[T]he 'legal relations' binding the parties are created by the utterance of a falsehood 'within a fraudulent intent' and by reliance thereon . . . ." 176 N.Y.S.2d at 263, 151 N.E.2d at 836.

Plaintiff's fraud claim seems to rest largely on the alleged negligence or recklessness of the Bank of Montreal in fail-

ing to detect New Zealand's allegedly fraudulent scheme (e. g., Plaintiff's Trial Memorandum, p. 5). However, plaintiff's allegation that Bank of Montreal misrepresented that New Zealand had an account, if proved, might support a finding that defendant Bank of Montreal knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that plaintiff was thereby deceived and damaged.

While the affidavit of Donald Gillies is inconsistent with some of these allegations, as noted at p. 641, *supra*, it does not appear that the material assertions of the affidavit were made on personal knowledge.

Defendants' motion for summary judgment is accordingly denied.

The court notes that, in view of this decision, this action will have to be tried to a jury, although the case raises issues which would best be tried to the court. *See Cohen, supra,* 478 F.2d at 117.

So ordered.