Frank J. **MAHER**, Plaintiff,

v.

**J. R. WILLISTON & BEANE, INC.**, et al.,
Defendants.

No. 66 Civ. 3672.

United States District Court
S. D. New York.

Aug. 3, 1967.

Davis J. Stolzar, Richard Ives Rudell, New York City, for plaintiff.

Shea, Gallop, Climenko & Gould, New York City, for defendants; Leon P. Gold, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant John H. Welch; H. William Van Wagenen, Jr., New York City, of counsel.

## MEMORANDUM OPINION ON MOTION TO DISMISS

MOTLEY, District Judge.

Defendants moved for an order, Rule 12(b), Fed.R.Civ.P., dismissing the original complaint for failure to state a claim upon which relief could be granted and for lack of jurisdiction over the subject matter. The original complaint, filed November 2, 1966, contained three causes of action. The first count was brought under Section 15(c) of the Securities Exchange Act of 1934, ("the Act"), 15 U.S.C. § 78o. The second and third counts were predicated on the doctrine of pendent jurisdiction. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); See generally, Lowenfels, Pendent Jurisdiction and the Federal Securities Acts, 67 Colum.L.Rev. 474 (1967).

Defendants motions were on the grounds that the first count, based on Section 15(c) of the Act, was barred by the applicable statute of limitations, Section 29(b) of the Act, 15 U.S.C. § 78cc(b), and that since plaintiff's only federal cause of action should be dismissed, his second and third claims, brought pursuant to state law, should be dismissed as there would be no federal cause of action upon which the doctrine of pendent jurisdiction could operate. Ruckle v. Roto American Corp., 339 F.2d 24, 27 (2d Cir. 1964).

Plaintiff, on December 23, 1966, no answer having been filed, Rule 15(a), Fed.R.Civ.P., served an amended complaint to which the pending motion to dismiss is directed. The allegations of wrongdoing contained in the amended complaint are totally identical to those contained in the original complaint. However, the amended complaint contains six causes of action, two (the first and second) under Section 10 of the Act, 15 U.S.C. § 78j, two (the third and fourth) under Section 15(c) (1) of the Act, 15 U.S.C. § 78o(c) (1), and two (the fifth and sixth) pursuant to state law, jurisdiction being predicated on the doctrine of pendent jurisdiction.

It is alleged that defendant, J. R. Williston & Beane, Inc. (hereinafter "Williston"), a Delaware corporation registered with the Securities and Exchange Commission having its principal office and place of business in New York, was the successor to the business and assets, subject to its liabilities, of a partnership operating under the name of J. R. Williston & Beane (hereinafter "partnership"). At all times Williston or its predecessor partnership was engaged in the city, county, and State of New York as a "broker" and "dealer" in securities as said terms "broker" and "dealer" are defined in the Act, 15 U.S.C. § 77b(12), and was subject to the provisions of the Act and to the Rules and Regulations of the Securities and Exchange Commission promulgated thereunder.

The individual defendants were each voting stockholders of defendant Williston and were each directors and/or officers during the periods hereinafter mentioned. It is further alleged that each of the individual defendants was the beneficial owner of voting stock of defendant Williston, and all of them directly or indirectly controlled the corporation.

It is alleged that on or about June 15, 1963, defendants Williston, Beane and Kantor caused and procured the plaintiff to purchase and accept 900 shares of Class A Non-Voting Stock

and 400 shares of Common Voting Stock of defendant Williston and to pay a total of $100,000.00 therefor.

Plaintiff claims that to induce him to purchase and accept defendant Williston's stock, defendants Beane and Kantor falsely and fraudulently represented to plaintiff that the stock was a safe and good investment on which he would get a good return; that Williston was sound financially, substantially as good as that of the predecessor partnership as shown on its balance sheet on March 30, 1963; that the corporation did little business with one "Tino" DeAngelis and his corporate affiliates in commodities and futures; that the corporation and its predecessor partnership operated at a profit; and that the corporation owned seats and memberships on various stock and commodities exchanges which represented an asset of the corporation of the current value of approximately $321,000.00 It is alleged that each representation by Beane and Kantor was false and fraudulent, was known by defendants to be false and fraudulent, was made to induce plaintiff to rely thereon and to agree to purchase and pay for and accept the Williston stock in reliance thereon; that plaintiff did not know that the representations were false and untrue, did rely thereon, and did purchase the stock to his damage. Furthermore, it is alleged that to induce plaintiff to purchase the stock, defendants Beane and Kantor fraudulently and intentionally concealed facts from plaintiff that Williston and its predecessor partnership had accumulated deficits from operations and sustained losses from operations; that Williston was engaging in business in violation of the net capital rule of the Securities and Exchange Commission; that the shares were risky investments; and that the stock when issued and paid for would have little or no value in comparison to the sum paid therefor. Plaintiff claims that if the true facts so concealed had been revealed, he would not have entered the transaction and purchased the shares, but since he did not know the true facts, he relied on defendants, and was defrauded and deceived by them and by their false representations and concealment of the true facts.

Plaintiff alleges defendants knew or should have known the financial condition of Williston and that it failed to comply with the net capital rule. In addition, it is alleged defendants made use of the mails, telephone, instruments of transportation and communication, and other means and instrumentalities of and in interstate commerce to effect transactions in securities, and they did thereby effect transactions in the subject securities otherwise than on a national securities exchange. Plaintiff also alleges that defendants conspired to obtain plaintiff's money; and they intended to and did defraud plaintiff by wrongful and unlawful acts, representations, omissions and conduct in violation of the Act and the Rules and Regulations promulgated thereunder.

Plaintiff claims his stock is worthless and he has been damaged in the amount of $100,000.00

### The Third and Fourth Causes of Action

Plaintiff's third cause of action is based on Section 15 of the Act, 15 U.S.C. § 78o, and the Rules and Regulations of the Securities and Exchange Commission promulgated and adopted pursuant to the Act, 17 C.F.R. § 240.15c 1–2.[1] The

---

1. 17 C.F.R. § 240.15c 1–2 Fraud and misrepresentation.

(a) The term 'manipulative, deceptive, or other fraudulent device or contrivance", as used in section 15(c) (1) of the act (sec. 2, 52 Stat. 1075, 15 U.S.C. § 78o(c) (1)), is hereby defined to include any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

(b) The term "manipulative, deceptive, or other fraudulent device or contrivance", as used in section 15(c) (1) of the act, is hereby defined to include any untrue statement of a material fact and any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading which statement or omission is made

fourth cause of action repeats and realleges all the allegations in the third cause and tenders the return of the stock. Jurisdiction of this court is invoked under Section 27 of the Act, 15 U.S.C. § 78aa.

Section 15(c) (1) of the Act, 15 U.S.C. § 78*o*(c) (1), on which plaintiff particularly relies for his third and fourth causes of action, provides in relevant part:

"No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security * * * otherwise than on a national securities exchange, by means of any manipulative, deceptive, or strike fraudulent device or contrivance * * *."

 Section 29(b) of the Act, 15 U.S.C. § 78cc(b) provides for actions brought for violations of Section 15(c) of the Act. Osborne v. Mallory, 86 F. Supp. 869, 878 (S.D.N.Y.1949).[2] The section provides both for actions seeking rescission and companion causes of action for money damages. Geismar v. Bond & Goodwin, Inc., 40 F.Supp. 876, 878(S.D.N.Y.1941).

Section 29(b) of the Act, 15 U.S.C. § 78cc(b) provides in part:

"(B) that no contract shall be deemed to be void by reason of this subsection *in any action maintained in reliance upon this subsection,* by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed

pursuant to paragraph (1) of subsection (c) of section 78*o* of this title, *unless such action is brought* within one year after the discovery that such sale or purchase involves such violation and *within three years after such violation."* (emphasis added.)

 In plain language, this section creates an absolute three year statute of limitations on the bringing of an action to void a contract based on violations of 15 U.S.C. § 78*o*(c) (1) or rules or regulations promulgated pursuant to the statute. The section clearly bars suits commenced more than three years after the occurrence of any violations, regardless of the date of discovery of the violations.

Paragraph 9 of the amended complaint alleges that the stock sale in issue was consummated "on or about June 15, 1963." The original complaint was sworn to and filed in this court on November 2, 1966. The action was commenced by the filing of the complaint with the court, Rule 3, Fed.R.Civ.P. The amended complaint filed on December 23, 1966, relates back to the date of the original complaint since it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Rule 15(c), Fed.R.Civ.P.

It is evident, therefor, that plaintiff's third and fourth causes of action based on Section 15(c) (1) of the Act were commenced more than three years after the date of the alleged violations. Are plaintiff's third and fourth causes of action time-barred?

 Plaintiff contends that there are two possible theories of liability for vio-

---

with knowledge or reasonable grounds to believe that it is untrue or misleading.

(c) The scope of this section shall not be limited by any specific definitions of the term "manipulative, deceptive, or other fraudulent device or contrivance" contained in other rules adopted pursuant to section 15(c) (1) of the Act. (Sec. 2, 52 Stat. 1075, 15 U.S.C. § 78*o*(c) (1)).

**2.** Cf., 59 Yale L.J. 1120, 1134 (1950): "As originally enacted, Section 29(b) merely declared that all contracts which

violate any provision of the Act, or any rule or regulation under the Act, shall be void. In 1938, Congress passed an amendment to Section 29(b) imposing a short statute of limitations on actions brought for violations of Commission rules under Section 15(c) (1). Since Section 15(c) (1), like Section 10(b), does not specifically provide for a private action, the implication of the amendment was that Congress had always assumed that private actions under those and similar provisions were available."

lations of Section 15(c) (1) of the Act, tort and contract. Plaintiff further argues that his third and fourth causes of action are based on a tort theory of fraud by a seller rather than on a contract theory. Plaintiff says that Section 29(b) of the Act, which contains the statute of limitations provision, is limited to a contract theory of action on which he does not rely. Plaintiff then claims the limitation is applicable "in any action maintained in reliance upon [the] subsection," only. The subsection referred to is as follows:

> "Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder * * * shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract * * *." Section 29(b), 15 U.S.C. § 78cc(b).

Plaintiff is clearly trying to use semantics and a distinction in the theory that he is pleading under his third and fourth causes to avoid the effect of the statute of limitations applicable to actions brought for violations of 15 U.S.C. § 78*o* (c) (1) by 15 U.S.C. § 78cc(b) (1). Plaintiff cannot succeed in this argument. In Goldenberg v. Bache & Co., 270 F.2d 675, 680 (5th Cir. 1959), the court said,

> "This action could be looked on either as an action *ex contractu, based* on the contract between stockbroker and customer as affected by the federal statute and regulations, or as an action *ex delicto,* based upon 'federal canon law torts.' Whichever may be the better theory, Mrs. Goldenberg seeks to hold Bache and Company responsible for 'manipulative, deceptive, or otherwise fraudulent device or contrivance' as defined by the statute, Title 15 U.S. C.A. § 78*o*(c) (1), and Regulation T, see footnote 2, supra. Granted that violations of the Act or Regulation entered into the sales or purchases of which she complains, yet, before such contracts are 'deemed to be void,' Mrs. Goldenberg's action must have

been brought both within three years after the violation and within one year after its discovery. 15 U.S.C.A. § 78cc(b), quoted in footnote 2, supra." (ftn. omitted).

Other courts have reached a similar conclusion. Whether plaintiff labels his cause of action as one in tort or contract, seeking either rescission or damages, the statute of limitations has been held applicable. In Geismar v. Bond & Goodwin, Inc., supra, 40 F.Supp. at 878, the court stated:

> "The 1938 amendment to Section 29(b) clearly contemplates that a civil suit against all of the defendants may be brought; it is not to be condemned because it is in form a proviso. I think, too, that the language of the section is sufficient not only for the cause of action for rescission (6th) but also for the companion causes of action for money damages (2d, 3d and 4th)."

Professor Loss, 3 Loss, Securities Regulation, 1760 (2 ed. 1961), commented on this as follows:

> "The court held that the 1938 amendment of § 29(b) creating a statute of limitations with respect to 'any action [for violation of § 15(c) (1)] maintained in reliance upon this subsection' clearly contemplated a civil suit not only for rescission but also for damages." (ftns. omitted).

More recently, in Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213 (9th Cir. 1962), the court said of the provision that

> "Although section 29(b) declares such illegal contracts void as regards the rights of any violator, it does not make such contracts void as regards the rights of the innocent party to the contract. See Bankers Life and Casualty Co. v. Bellanca Corp., 288 F.2d 784, 787 (7th Cir., 1961). The defrauded party has to bring a suit to rescind; the contract is voidable as to his rights since he can keep the stock or sue to rescind the sale. *When he sues, the normal defenses come into operation.* Since the buyer can elect to retain his investment, we see no

reason why he can not waive his statutory right to rescind or be estopped from asserting such right." (emphasis added.)

See 3 Loss, Securities Regulation, 1777–79 (fth. 326), 1757–60 (2 ed. 1961).

Moreover, other courts in discussing the fact that actions for violations of Section 15(c) of the Act, were provided for by Section 29(b) of the Act, failed to distinguish between contract and tort theories. Osborne v. Mallory, supra, at 878; Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946); Coburn v. Warner, 110 F.Supp. 850 (S.D.N.Y. 1953).

Even if one accepts the court's conclusion in Bankers Life and Casualty Co. v. Bellanca Corp., 288 F.2d 784, 787 (7th Cir. 1961) that, "Whether the seller's rights under the contract have been voided by § 78cc(b), or have become unenforceable because of its breach of the contract, the rights of the purchaser are to be measured by the law of the jurisdiction involved.", plaintiff finds no support in state law for his argument. The language of the New York Court of Appeals when faced with an argument similar to that of the plaintiff is appropriate. The court in Brick v. Cohn-Hall-Marx Co., 276 N.Y. 259, 263–264, 11 N.E.2d 902, 904 (1937), said:

"The basis of the action is the contract. The claim of the plaintiffs is based upon the contract; in other words, if the defendant owes the plaintiffs any money, it is because of the agreement which it made to pay royalties upon sales which were made. Even though the defendant may have falsely stated the amount of the sales and rendered false statements, the fact remains that its liability on the actual amount of sales depends upon the contract. Whether the defendant, deliberately refused to make payment, thus breaching its contract, or whether through neglect it made false statements or whether it deliberately made false statements, the action of the plaintiffs is founded and based upon the contract, without which they would

have no claim at all. The falsity of these statements and the fraud of the defendant according to the allegations amounted to a breach of the contract and were no more or less a breach of the contract than if the defendant had deliberately refused to pay or had neglected to pay. *The only purpose which serves the plaintiffs in pleading the fraud is to avoid the statute of limitations; that is to say, the plaintiffs, within the six years, would have had the same right to recover with or without the allegations of the fraud.* The fraud element is added merely to take the case without the six-year statute. This does not change the nature of the action, however, in our judgment, from an action upon contract to an action upon fraud within the meaning and purpose of this statute of limitations (section 48). *To say that the complaint is framed in fraud and not upon contract may be true in theory, but in applying the statute of limitations we look for the reality, and the essence of the action and not its mere name.* Whatever we may call this action, it is, so far as the statute of limitations is concerned, an action upon the contract and within the six-year statute." (emphasis added.)

For the above-stated reasons this court concludes that whether plaintiff labels his third and fourth causes of action as tort or contract they are time-barred by the applicable three year period of limitation for the bringing of such actions. This court will not permit plaintiff to get around the effect of a statutory period of limitation by use of a mere distinction in the theory he pleads. See, Miller v. United States Gypsum Co., 96 F.2d 69 (2d Cir. 1938). Defendants' motions to dismiss plaintiff's third and fourth causes of action are granted.

*The First and Second Causes of Action*

Defendants have also moved to dismiss plaintiff's first and second causes of action. Plaintiff's first and second causes are based on the provisions of Sections 10 and 27 of the Act, 15 U.S.C. §§ 78j and 78aa, and under the Rules

and Regulations of the Securities and Exchange Commission adopted and promulgated pursuant to the Act, 17 C.F.R. & 240.10b–5 and § 240.10b–3. The distinction between the first and second causes is that in the latter, plaintiff tenders return of the stock received on the purchase.

Defendants argue that the first and second causes were added in the amended complaint solely to avoid the statute of limitations now held applicable to the third and fourth causes of the amended complaint. The amended complaint adding the alleged violations set forth in the first and second causes was filed after the filing of a motion to dismiss the original complaint containing as its only federal claims alleged violations of Section 15(c) of the Act on the grounds that the federal causes set forth therein were *prima facie* time-barred by the provisions of Section 29(b) of the Act.

Section 10 of the Act, 15 U.S.C. § 78j provides in relevant part:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

The Rules and Regulations promulgated pursuant to the Act by the Securities and Exchange Commission provide in pertinent part as follows:

> "It shall be unlawful for any broker or dealer, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, to use or employ, in connection with the purchase or sale of any security otherwise than on a national securities exchange, any act, practice, or course of business defined by the Commission to be included within the term "manipulative, deceptive, or other fraudulent device or contrivance", as such term is used in section 15(c) (1) of the Act [See ftn. 1, supra]." 17 C.F.R. § 240.10b–3.

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.

Defendants argue that since the allegations and evidence required under both Section 15(c) of the Act, and Section 10(b) of the Act, are identical,[3] and since Section 15(c) applies to broker-dealers only, and defendant Williston is a broker-dealer, plaintiff is relegated for relief only to Section 15(c) by reason of the rules of statutory construction and interpretation which provide that "The expression of one thing is the exclusion of another," [4] and "That which is expressed makes that which is implied to cease, [that is, supersedes it, or controls its

---

3. Compare 17 C.F.R. § 240.15c 1–2, supra, ftn. 1, with 17 C.F.R. §§ 240.10b–3 and 240.10b–5, supra.

4. The maxim *"expressio unius est exclusio alterius."* Black, Law Dictionary, 692 (4th ed. 1951).

effect]."[5] The courts have described the effect of the rule as follows:

"The settled rule of statutory construction is that, where there is a special statutory provision affording a remedy for particular specific cases and where there is also a general provision which is comprehensive enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former. (cites omitted.)" Montague v. Electronic Corp. of America, 76 F.Supp. 933, 936 (S.D.N.Y.1948).

■ Defendants make this argument because though there is a specific and absolute statute of limitations on all civil suits based upon violations of Section 15(c) of the Act as set forth in Section 29(b) of the Act, providing that all such suits must be brought within three years and plaintiff's action here is so time-barred, there is no such limitation on actions brought for violations of Section 10(b) of the Act. There is no federal statute of limitations for civil actions based upon Section 10(b) of the Act. The courts have held that state statutes of limitations governing fraud cases shall be the statutes of limitations applied to civil actions brought under Section 10(b) of the Act. Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2d Cir. 1951); Fratt v. Robinson, 203 F.2d 627, 634, 37 A.L.R.2d 636 (9th Cir. 1953). In New York, Section 213 of the Civil Practice Law and Rules provides for a statute of limitations with respect to fraud cases as follows:

"The following actions must be commenced within six years:

\* \* \* \* \* \*

(9) an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."

If plaintiff can bring a cause of action under Section 10(b) of the Act based on the same transaction and facts as his cause under Section 15(c), he would not here be barred from relief despite the fact that his action was commenced more than three years after the date of the alleged violations. Can plaintiff bring an action for violation of Section 10(b) as well as for violation of Section 15(c) alleging the same facts?

■ A party injured by a violation of Section 10(b) of the Act has a civil cause of action against a party violating the statute. Cooper v. North Jersey Trust Co. of Ridgewood, N. J., 226 F. Supp. 972, 978 (S.D.N.Y.1964); Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y.1965). "Section 10(b), to be sure, does not explicitly authorize a civil remedy. Since, however, it does make 'unlawful' the conduct it describes, it creates such a remedy." Fischman v. Raytheon Mfg. Co., supra, 188 F.2d at 787. Section 10(b) of the Act is, therefore, an antifraud provision on which an injured buyer may rely when seeking relief. It must be noted, however, that Section 10(b) is only one of three general antifraud provisions of the securities legislation.[6]

Professor Loss, 3 Loss, Securities Regulation, 1428–1429 (2 ed. 1961), has described these provisions as follows:

"At present, in sum, there are three *general* antifraud provisions—§ 17(a) of the Securities Act, Rule 10b–5 under § 10(b) of the Exchange Act, and § 15(c) (1) of the Exchange Act (particularly Rule 15c 1–2 thereunder)— which may be the basis of injunctive or administrative action by the Commission, or criminal prosecution in the case of a willful violation, or (with the probable exception of § 17(a)) private actions by buyers or sellers for rescission or damages. These obvious-

---

5. The maxim *"expressum facit cessare tacitum."* Black, Law Dictionary, 692 (4 ed. 1951).

6. In addition there are Section 15(c) (1) of the Act, 15 U.S.C. § 78o(c) (1), and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q.

ly overlap. For example, all three apply to fraud in the *over-the-counter sale* of securities by a *broker or dealer*. However, they have their differences not only in coverage but also in the niceties of phraseology and jurisdictional language. It is those considerations which govern whether a particular action is best laid under one or two or all three of the provisions. "All three provisions apply regardless of whether the particular security or the particular broker or dealer is registered or exempted from registration. (ftns. omitted.)"

Professor Loss, Id. at ftn. 19, p. 1427, also discusses the impact of some of the rules passed pursuant to the statutory provisions wherein he says,

"Rule 10b–3 merely incorporates as to broker-dealers the rules under § 15(c) (1) and is largely if not entirely supererogation except for its possible impact on the statute of limitations in § 29(b), which applies only to private actions to void contracts made in violation of § 15(c) (1)."

■ Section 2 of the Act, 15 U.S.C. § 78b, evidences that "One of the primary purposes of Congress in enacting the Securities Exchange Act of 1934 was to protect the general investing public." Baird v. Franklin, 141 F.2d 238, 244 (2d Cir. 1944), cert. denied, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). This provision provides in part:

" * * * transactions in securities as commonly conducted upon securities exchanges and over-the-counter markets are affected with a national public interest which makes it necessary to provide for regulation and control * * * and to impose requirements necessary to make such regulation and control reasonably complete and effective * * *."

The provisions of the Act must be construed in light of this intent and purpose. See Baird v. Franklin, supra, dissent of Judge Clark; Fratt v. Robinson, supra; Cf., Straley v. Universal Uranium & Milling Corp., 289 F.2d 370, 372 (9th Cir. 1961).

The court in Fratt v. Robinson, supra, and Judge Clark in Baird v. Franklin, supra, rejected the application of the rule *"expressio unius est exclusio alterius"* to bar actions brought under Section 10(b) of the Act reasoning that this would affect the purpose of the statute. Moreover, the Supreme Court in Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943), similarly rejected strict application of statutory interpretation maxims in the securities field stating:

"Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy. (ftns. omitted.)"

■ On the basis of the foregoing rejections of mechanical rules of statutory interpretation, and from the plain language of Sections 10(b) and 15(c) of the Act and the Rules and Regulations of the Securities and Exchange Commission passed pursuant thereto, particularly with reference to the rule relating to broker-dealers, 17 C.F.R. § 240.10b–3, this court concludes that plaintiff may bring an action based on violations of Section 10(b) of the Act and the rules promulgated pursuant to the authority it grants despite the existence of the specific broker-dealer provision, Section 15(c) of the Act. The court reaches this conclusion even though in the instant matter plaintiff's causes under Section 15(c) are time-barred by the provisions of Section 29(b) of the Act.

Defendants' motions to dismiss plaintiff's first and second causes of action are denied.

*The Fifth and Sixth Causes of Action*

Plaintiff's fifth cause of action arises under the laws of the State of New York and his sixth cause of action is based upon common law principles of fraud. Federal jurisdiction over these claims is based on principles of pendent jurisdiction since diversity jurisdiction does not here exist.

Since this court finds that plaintiff's first and second causes stating federal claims cannot be dismissed at this stage of the proceedings, this court concludes that it has pendent jurisdiction of plaintiff's fifth and sixth causes of action. United Mine Workers of America v. Gibbs, supra; Cf., Ruckle v. Roto American Corp., supra; O'Neill v. Maytag, 339 F.2d 764, 767 (2d Cir. 1964).

Defendants' motions to dismiss plaintiff's fifth and sixth causes of action are denied.