**Elias LIVINGSTON and Vivienne Livingston, Plaintiffs,**

**v.**

**WEIS, VOISIN, CANNON, INC., a corporation of the State of Delaware; Philips, Appel & Walden, a partnership organized under the laws of the State of New York; James J. Philips, Barry Appel, and James A. Walden, Defendants.**

**Civ. A. No. 1106–67.**

United States District Court
D. New Jersey,
Civil Division.

Dec. 20, 1968.

McCarter & English, by Francis E. P. McCarter and Rodney N. Houghton, Newark, N. J., for plaintiffs.

Reibel, Isaac & Tannenbaum, Elizabeth, N. J., for defendant, Weis, Voisin, Cannon, Inc.; Morton M. Meyer, Neal J. Hurwitz, New York City, of counsel.

Clapp & Eisenberg, by Stuart L. Pachman, Newark, N. J., for defendants, Philips, Appel & Walden, James J. Philips, Barry Appel and James A. Walden.

COOLAHAN, District Judge:

This is a tort action arising out of certain stock transactions between plaintiffs and defendants. The defendant Philips, Appel & Walden (hereinafter referred to as PAW) is a stock brokerage firm with its principal place of business in New York City. Defendants James J. Philips, Barry Appel, and James A. Walden are sued individually as partners in that firm. The defendant Weis, Voisin, Cannon, Inc. (hereinafter referred to as WVC) is a Delaware Corporation having a principal place of business in New York City and an office in Englewood, New Jersey. It is engaged in the clearing brokerage business, purchasing and selling stock and maintaining books and records for stock brokerage firms such as defendant PAW.

Counts 1 and 2 of plaintiffs' four-Count Complaint charge that defendant PAW, through its individual partners, induced the plaintiffs to open a discretionary account with PAW for the purpose of trade in convertible bonds, and that defendant PAW traded in plaintiffs' account in violation of Section 7 of the Securities Exchange Act of 1934 (hereinafter referred to as the "Securities Exchange Act," or the "Act"), 15 U.S.C. § 78g, and Regulation T enacted thereunder, 12 C.F.R. § 220, by illegally extending credit to plaintiffs in order to purchase securities for plaintiffs' account which were registered on a national securities exchange. Counts 1 and 2 allege that defendant WVC participated in these illegal transactions by serving as "clearing brokers," for the account, performing bookkeeping functions with regard thereto, and mailing to plaintiffs reports of the transactions ordered by PAW. This court is asserted to have jurisdiction by virtue of Section 27 of the Securities Exchange Act, 15 U.S.C. §

78aa. Count 3 of the Complaint apparently asserts this court's pendant jurisdiction, and alleges that defendants bought and sold securities for plaintiffs' account in a careless and negligent manner. Count 4, also apparently asserting pendant jurisdiction, charges that defendants unjustly enriched themselves by rapid buying and selling of securities on plaintiffs' behalf for the purpose of generating commissions ("churning").

The case is before the court at the present time on motions to dismiss by all defendants. Basically, the defendants' contentions are: 1) that plaintiffs' cause of action is time barred by the statute of limitations contained in Section 29(b) of the Securities Exchange Act, 15 U.S.C. § 78cc(b); 2) that Section 7 of the Act, 15 U.S.C. § 78g, the basis for plaintiffs' Counts 1 and 2, does not grant a right of action to a private investor for violation of margin requirements; 3) that, as far as defendant PAW and its codefendant partners are concerned, venue was improperly laid in this district, according to the rules laid out in Section 27 of the Act, 15 U.S.C. § 78aa; 4) that, as far as defendant WVC is concerned, Counts 3 and 4 fail to state a claim, as WVC was in no way connected with the alleged activities claimed in these counts, but instead merely acted as the clearing broker for PAW, plaintiff's broker. The court will consider the various arguments in the order listed above.

## STATUTE OF LIMITATIONS QUESTION

As has been adverted to earlier, defendants' basic position on the limitations question is that the action is time barred by the one-year limitations provision of Section 29(b) of the Act, 15 U. S.C. § 78cc(b). That section provides that "every contract made in violation of any provision of this chapter [the Act] or any rule or regulation thereunder * * * shall be void * * *." It further provides that

no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this

subsection, by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation.

Defendants contend that plaintiffs became (or should have become) aware of any margin violations by defendants as early as March or April of 1966, and certainly by September of 1966, and hence that the filing of the Complaint in the present case on October 27, 1967 was simply too late. Plaintiffs challenge the applicability of the statute of limitations contained in Section 29(b) on two grounds, and further argue that, even if Section 29(b) is applicable, plaintiffs did not discover, and could not have reasonably discovered, defendants' margin violations until within one year of the filing of the Complaint in present case. Because it is the court's view that Section 29(b) is inapplicable to the present case, there will be no need to reach plaintiffs' contentions with respect to the time that they reasonably discovered defendants' violations.

■ Plaintiffs challenge the applicability of Section 29(b) on two grounds: 1) This is a tort action, and not a contract action provided for by Section 29(b); 2) In any event, this is not a suit for a violation of Section 15(c) (1) of the Act, 15 U.S.C. § 78o(c) (1), the only type of suit to which the limitations provision of Section 29(b) would be applicable. Although the court disagrees with plaintiffs' position with respect to the importance to be attached to plaintiffs' having chosen to sue defendants in tort rather than in contract, see

Maher v. J. R. Williston & Beane, Inc., 280 F.Supp. 133, 137–39 (S.D.N.Y. 1967), and cases cited therein, it does agree with plaintiffs that the limitations provision of Section 29(b) of the Act applies only to suits for violations of Section 15(c) (1) of the Act, 15 U.S.C. § 78o(c) (1), and not to suits, such as the present one, for violations of the margin requirements provided for in Section 7 of the Act, 15 U.S.C. § 78g.

A first consideration is the clear language of Section 29(b) itself. That section provides, as has been recited earlier, that suits against brokers for violations of "paragraph (1) of subsection (c) of section 78o of this title" must be brought within one year after discovery of the violation. In contrast to the general language of Section 29(b), which renders "every contract" made in violation of the Act void, the limitations section applies only to suits for violations of Section 15(c) (1) of the Act, 15 U.S. C. § 78o(c) (1). Nor is this the type of suit where it could be argued that plaintiff could and should have sued for a violation of Section 15(c) (1) and hence must be saddled with all the accoutrements of that section, including the limitations provision of Section 29(b).[1] Whereas Section 15(c) (1) of the Act provides that "No broker or dealer shall make use of the mails * * * to effect any transaction in * * * any security * * * *otherwise than on a national securities exchange,* by means of any manipulative, deceptive, or other fraudulent device or contrivance" (Emphasis added.), the present action, even assuming that an imaginative eye could find it to be one charging defendants with having perpetrated a "manipulative, deceptive, or other fraudulent device," is clearly not one for the employment of such a device in the case of securities sold "otherwise than on a national securities exchange," as plaintiffs'

---

1. On this question, compare Maher v. J. R. Williston & Beane, Inc., 280 F.Supp. 133, 139–142 (S.D.N.Y.1967) with Lorenz v. Watson, 258 F.Supp. 724, 734 (E.D. Pa.1966). It is by no means clear that, even were the present complaint of such a nature that Section 15 *could* serve as one of its bases, the plaintiff would be subject to the limitations provision for Section 15, namely Section 29(b).

Complaint clearly charges defendants with having purchased the stock in question on the New York Stock Exchange. Plaintiffs certainly cannot be bound by the limitations provisions of a statute on which they most clearly could not have based their suit.

Defendants' sole reliance is on a most mystifying case, Goldenberg v. Bache and Company, 270 F.2d 675 (5th Cir. 1959), where it was stated:

> This action could be looked on either as an action *ex contractu*, based on the contract between stockbroker and customer as affected by the federal statute and regulations, or as an action *ex delicto*, based upon "federal canon law torts [sic]". Whichever may be the better theory, Mrs. Goldenberg seeks to hold Bache and Company responsible for [a] "manipulative, deceptive, or otherwise fraudulent device or contrivance" as defined by the statute, Title 15 U.S.C.A. § 78o(c) (1), and Regulation T, see footnote 2, supra. Granted that violations of the Act or Regulation entered into the sales or purchases of which she complains, yet, before such contracts are "deemed to be void," Mrs. Goldenberg's action must have been brought both within three years after the violation and within one year after its discovery. 15 U.S.C.A. § 78cc(b) * * *.

To begin with, this sole recitation of the nature of plaintiff's case in *Goldenberg* leaves unclear whether defendant Bache's alleged violation of Regulation T was pleaded as constituting part of its alleged "manipulative, deceptive, or otherwise fraudulent device or contrivance," in violation of Section 15(c) (1) of the Act, 15 U.S.C. § 78o(c) (1), or whether, on the other hand, a separate basis for plaintiff's action was, as in the present case, an alleged violation by defendant of Section 7 of the Act, 15 U.S. C. § 78g. If the violation of Regulation T was alleged to be part of the challenged device or contrivance the *Golden-*

*berg* decision would undoubtedly constitute a correct interpretation of the Securities Exchange Act, as a Section 15(c) (1) suit would be directly subject to Section 29(c). On the other hand, if the alleged violation of Regulation T was pleaded separately as the basis for an action based directly on Section 7 of the Act, 15 U.S.C. § 78g, then it would have to be concluded that the *Goldenberg* decision incorrectly interpreted the Act, since there can be no doubt that the limitations provision in Section 29(b) of the Act applies *only* to actions pursuant to Section 15(c) (1) of the Act, 15 U.S. C. § 78o(c) (1), or *at the very most* to actions which might have been brought under Section 15.[2]

█ █   In view of the fact that Section 29(b) of the Act is inapplicable to the present case, it becomes clear that recourse must be had to the law of New Jersey to determine the applicable period of limitations. See Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967); Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965); cf. Conard v. Stitzel, 225 F.Supp. 244 (E.D.Pa.1963). Although there might be some dispute in a different set of circumstances as to whether N.J.S. 2A:14–1, N.J.S.A., providing for a six-year limitations period, or N.J.S. 2A:14–2, providing for a two-year period, is the applicable New Jersey rule, a conclusion in the present case that the two-year statute is applicable (which is very doubtful) would not bar plaintiffs' action here, since defendants apparently concede that the very earliest that plaintiffs knew or had reason to know of any margin violations by defendants was March of 1966, and plaintiffs' Complaint in this action was filed on October 27, 1967. It appearing that plaintiffs have filed this suit within the proper time provided for by New Jersey law, defendants' motion to dismiss their action on this ground will be denied.

---

2. See footnote 1, supra, and accompanying text.

QUESTION AS TO THE EXISTENCE OF A PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF SECTION 7 OF THE ACT, 15 U.S.C. § 78g.

■ The court will not dwell long on defendants' contention that no private right of action for violations of Section 7 of the Securities Exchange Act, 15 U.S.C. § 78g, should be implied. Every court that has considered the question has determined that, just as in the case of Section 10(b) of the Act, 15 U.S.C. § 78j(b), there is a private right of action for violations of Section 7, and no cases to the contrary are cited by the defendants. In fact, this court has itself recently decided in favor of the plaintiffs' position. See Levin v. Great Western Sugar Co., 274 F.Supp. 974 (D.N.J. 1967). See also Meisel v. North Jersey Trust Co., 218 F.Supp. 274 (S.D.N.Y. 1963); Reader v. Hirsch & Co., 197 F. Supp. 111 (S.D.N.Y.1961); Remar v. Clayton Sec. Corp., 81 F.Supp. 1014 (D. Mass.1949); Note, Federal Margin Requirements as a Basis for Civil Liability, 66 Colum.Law Rev. 1462 (1966). Cf. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

QUESTION AS TO VENUE

Defendant PAW and its co-defendant partners contend that venue was improperly laid in this district by plaintiffs, according to the rules laid out in Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa. That section provides, in relevant part:

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business * * *.

It is defendants' position that they do not come within any of the four possible bases for venue enunciated in Section 27. Plaintiffs, on the other hand, maintain that defendants transact business within New Jersey. It is the court's view that plaintiffs' position is correct.

■ It has been often stated that the "transacting business" standard for venue in Section 27 of the Securities Exchange Act, like similar standards for venue in other acts such as the Securities Act of 1933 and the Clayton Act, is a less exacting standard than the "doing business" or "minimum contacts" standard which has been employed to test personal jurisdiction over defendants at common law. See Zorn v. Anderson, 263 F.Supp. 745 (S.D.N.Y.1966); United Industrial Corp. v. Nuclear Corp., 237 F.Supp. 971 (D.Del.1964); Ohio Midland Light and Power Co. v. Ohio Brass Co., 221 F.Supp. 405 (S.D.Ohio 1962); Uccellini v. Jones, 182 F.Supp. 375 (D. D.C.1960); Windsor Theatre Co. v. Loew's, Inc., 79 F.Supp. 871 (D.D.C. 1948); SEC v. Wimer, 75 F.Supp. 955 (W.D.Pa.1948). At the same time, it has been frequently said that, despite this wide definition of "transacts business" for purposes of venue under the various acts, "the courts have insisted that the activities constitute a substantial part of a defendant's ordinary business, that they be continuous, and at least of some duration." See United Industrial Corp., supra, 237 F.Supp. at 978. The two legal statements have been said to be based on the United States Supreme Court decision in United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), to be examined below. Although this court strongly suspects that plaintiffs in the present case, if forced to do at trial, could in fact establish the fact that defendant PAW and its partners conduct continuous business in New Jersey, it is the court's view that the above-cited line of cases of which Zorn v. Anderson, supra, is the latest, which rely on the *Scophony* decision, is now antiquated by virtue of the post-*Scophony* Supreme Court decision in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199,

2 L.Ed.2d 223 (1957), which eliminated the requirement of continuous business for personal jurisdictional purposes, and established that personal jurisdiction may be asserted over a non-resident defendant where he performs but one act of business solicitation in the forum state, if the suit in question arises out of that act. Instead, it is the court's view that the "transacting business" standard of Section 27 of the Securities Exchange Act is co-extensive with the "minimum contacts" test employed to test personal jurisdiction over defendants at common law, and that the activities of defendant PAW and its partners in soliciting business and consummating a contract in the state of New Jersey are sufficient to permit Securities Exchange Act venue to be laid in this district.

■ United States v. Scophony, supra, which could arguably be relied upon for the proposition that plaintiffs must, in order to establish venue in this district, prove continuous business by defendants which constitute a substantial part of their business, stands for no such proposition. Instead, this 1948 case involved an interpretation of the language of the "transacts business" venue provision of Section 12 of the Clayton Act and defendant's contention that "transacts business" was the equivalent of the traditional common law concept of being an "inhabitant" of or "found" in the forum state. Rejecting this notion, the Court relied on its earlier decision in Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S. Ct. 400, 71 L.Ed. 684 (1927), noting that:

This construction [in the *Eastman* case] gave the words "transacts business" a much broader meaning for establishing venue than the concept of "carrying on business" denoted by "found" under the preexisting statute and decisions. The scope of the addition was indicated by the statement "that a corporation is engaged in transacting business in a district * *

if *in fact, in the ordinary and usual sense,* it 'transacts business' therein *of any substantial character."* Id. [273 U.S. at page 373, 47 S.Ct. 400 at page 403]. (Emphasis added.)

In other words, for venue purposes, the Court sloughed off the highly technical distinctions theretofore glossed upon "found" for filling that term with particularized meaning, or emptying it, under the translation of "carrying on business." In their stead it substituted the practical and broader business conception of engaging in any substantial business operations. [All emphasis in original.]

333 U.S. at 807, 68 S.Ct. at 861. From this quotation, it can be seen that the statement in *Scophony* to the effect that "transacting business" under the Clayton Act venue provision is a less exacting standard than the "doing business" standard for personal jurisdiction, and the statement that all that it required is that the corporation engage in "substantial business operations," are both to be understood in their proper context: The citation to the *Eastman* case was solely to refute defendant's contention that "transacts business" under the Clayton Act was the equivalent of the traditional requirement that a defendant be "found" in the forum state before the courts of that state would have personal jurisdiction over him, and the statement that all that it required is that the corporation engage in "substantial business operations" was nothing but a restatement of the new "minimum contacts" rule enunciated three years earlier in the International Shoe Co. v. Washington decision, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Since *International Shoe,* of course, the concept of "minimum contact" has been broadened to the extent that, as in McGee v. International Life Ins. Co., supra, it is no longer required that a corporation, to be subject to a forum state's personal jurisdiction, engage in continuous business, or "substantial business operations." Instead, as established in *McGee,* even a single act by an out of state

corporation may subject it to the forum state's jurisdiction, if the cause of action in question arises out of that act. In view of the Supreme Court's juxtaposition in the *Scophony* case of the Clayton Act's (and by inference the Securities Exchange Act's) venue requirements with the common law requirements for personal jurisdiction, and there being no reason to doubt that the juxtaposition should continue, this court holds that even a single act by an out of state corporation (or partnership) may be the basis for Securities Exchange Act venue to be properly laid in that state. It is now essential to consider the nature of the acts of defendant PAW and its partners in New Jersey, and to compare these acts with those of the defendant International Life Insurance Company in the *McGee* case.

■ On this score, the court has no doubt but that the activities of defendant PAW and its partners in New Jersey were greater than those of the International Life Insurance Company in California. International Life's sole relationship with California in *McGee* was its mailing of a reinsurance certificate to Lowell Franklin, a resident of California, whose death subsequently precipitated the law suit. International Life had no office or agent in California, and had never solicited or done any business in California apart from the Franklin Insurance policy. In the present case, plaintiffs allege and defendants either admit or fail to deny by affidavit that PAW advertised its services in a newspaper which was circulated in New Jersey; that PAW sent literature to plaintiffs in New Jersey; that PAW employees (including defendant Gerald Walden, a partner) visited with plaintiff Elias Livingston in New Jersey, soliciting their business, and ultimately persuading plaintiffs to open an account with PAW, while in New Jersey; that money was sent to PAW from New Jersey; that PAW arranged bank loans for plaintiffs with New Jersey banks; that loan agreements were mailed by PAW to plaintiffs in New Jersey; and that PAW made numerous telephone calls to plaintiff Elias Livingston in New Jersey. This court can reach no other conclusion but that defendant PAW and its partners "transacted business" in New Jersey, within the meaning of Section 27 of the Securities Exchange Act, 15 U.S. C. § 78aa. Defendants' motion to dismiss on venue grounds will be denied.

QUESTION AS TO WHETHER COUNTS 3 AND 4 OF COMPLAINT STATE A CLAIM AGAINST DEFENDANT WEIS, VOISIN, CANNON, INC.

■ Defendant WVC moves to dismiss Counts 3 and 4 of the Complaint on the ground that they fail to state a claim against it. Count 3 of the Complaint, it will be recalled, charges defendants with negligence in investing and managing funds placed in their trust by plaintiffs; Count 4 of the Complaint charges defendants with unjustly enriching themselves by rapid buying and selling of securities on plaintiffs' behalf for the purpose of generating commissions. It appearing that defendant WVC, even according to plaintiffs' Complaint, had nothing to do with the actual purchasing and selling decisions with respect to plaintiffs' account with PAW, but instead served only as a bookkeeper for the account, these counts will be dismissed as failing to state a claim against defendant WVC.

Let an appropriate order be submitted.