Stuart SIEGEL, Jerome Meyer, David Meyer, and the Jill and Irving Siegel Trust

v.

HOMESTORE, INC., Stuart H. Wolff, John M. Giesecke, Jr., Joseph J. Shew, John R. Desimone, Peter B. Tafeen, and David M. Rosenblatt

No. CIV.A. 02–8275.

United States District Court, E.D. Pennsylvania.

March 19, 2003.

M. Norman Goldberger, Judah I. Labovitz, Michael D. LiPuma, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for Plaintiffs.

Barbara W. Mather, Jeremy Heep, Pepper Hamilton LLP, Philadelphia, PA, for Defendant: Homestore.

Ann P. Laupheimer, Blank Rome, Philadelphia, PA, for Defendant: S.H. Wolff.

Daniel T. Fitch, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Defendant: J.M. Giesecke, Jr., J.J. Shew, J.R. DeSimone.

Alexander Kerr, Christine Coyne Pia, Hoyle, Morris & Kerr LLP, Philadelphia, PA, for Defendant: P.B. Taffen.

John A. Guernsey, Conrad O'Brien Gellman & Rohn PC, Philadelphia, PA, for Defendant: D.M. Rosenblatt.

## *MEMORANDUM AND ORDER*

JOYNER, District Judge.

This civil action has been brought before the Court on Motion of the Defendants, Homestore, Inc., Joseph Shew, Stuart Wolff and Peter Tafeen to Dismiss for Improper Venue pursuant to Fed.R.Civ.P. 12(b)(3) or alternatively to transfer pursuant to 28 U.S.C. § 1404(a) or § 1406(a). For the reasons discussed below, the motion to transfer shall be granted and this case transferred to the U.S. District Court for the Central District of California.

### *Background*

This action arises out of the plaintiffs' sale of iPlace, Inc. to Homestore, Inc. in exchange for some $73 million in cash and $78 million in Homestore stock. Prior to August 24, 2001, the plaintiffs were three of the four management stockholders of iPlace, Inc., the operator of a consumer and credit information and services website. Because the management stockholders were to continue to be employed and involved in the management of the merged company, they were predominantly compensated for the sale in Homestore stock. In conjunction with the iPlace sale, the parties entered into a "Registration Rights Agreement," which required that within 120 days of the closing, Homestore would file with the SEC a registration statement with respect to the registrable securities

that would permit their disposition by the plaintiffs.

Plaintiffs allege that prior to the sale, Defendants fraudulently misrepresented that Homestore's financial condition was strong in numerous press releases and Securities and Exchange Commission filings. In reality however, Homestore had for some time been engaged in a scheme known as "round-tripping," whereby it paid inflated sums to various vendors for products and services which the vendors then used to purchase advertising from two media companies. Those media companies then bought advertising from Homestore and Homestore recorded the money received from those advertising sales as revenue on its financial statements. In this manner, Homestore was able to convey a favorable financial condition to the public and thereby inflate the price of its stock.

Some two months after its acquisition of iPlace, Homestore announced an "organizational re-alignment and cost reduction plan" at which time plaintiffs Stuart Siegel, Jerome Meyer and David Meyer were terminated from their employment with the Homestore organization. On November 1, 2001, Homestore issued a press release reporting a $6.9 million loss for its Third Quarter and announcing that it was slashing its 2002 revenue projections from $685 million to $375–425 million. Not surprisingly, the price of Homestore stock then plummeted by more than 50% from $4.99 to $2.28.

On December 21, 2001, Homestore issued a press release announcing that its Board of Directors was conducting an audit inquiry into the company's accounting practices. That same day, trading in Homestore stock was halted. Although trading eventually resumed in January, 2002 as the internal accounting inquiry continued, the stock price was down to $3.60 per share. Homestore's internal audit eventually revealed the full scope of the "round-tripping practices," and the company amended its SEC filings to reflect significant reductions in revenue which in turn resulted in further reductions in the price of Homestore stock.

In September, 2002, the U.S. Attorney General announced that three former Homestore executives, defendants John Giesecke, Joseph Shew and John DeSimone had pled guilty to federal criminal charges of wire fraud, conspiracy to commit securities fraud and insider trading and that defendants Stuart Wolff and Peter Tafeen were also under investigation by the Justice Department.

By this action, Plaintiffs contend that because Homestore never registered their shares, they were legally prohibited from selling their stock, which was trading at $2.54 per share as of April 22, 2002, down from $22.42 at the time of the sale in August, 2001. Plaintiffs' complaint therefore seeks damages from Defendants for Securities Fraud under §§ 10(b) and 20(a) and Rule 10b–5, common law fraud, breach of contract, negligent misrepresentation and unjust enrichment. Defendants now seek the dismissal or transfer of this matter to the U.S. District Court for the Central District of California on the grounds that venue does not lie here and because under the forum selection clause in the Agreement and Plan of Merger, the parties agreed to submit to the jurisdiction of any state or federal court sitting in Los Angeles County, California.

### Discussion

Analysis of any motion to dismiss or transfer for venue purposes must begin with acknowledgment of the well-settled principles that a plaintiff's choice of forum is not to be lightly disturbed and that the burden of establishing the need for transfer rests with the movant. *Jumara v.*

*State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir.1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). Here, Defendants' motion implicates 28 U.S.C. §§ 1404(a) and 1406(a), governing change of venue and the cure or waiver of defects. Under Section 1404(a),

> "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Similarly, Section 1406(a) provides that

> "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Section 1404(a) thus provides for the transfer of a case where both the original and the requested venue are proper, whereas Section 1406 applies where the original venue is improper and allows for either transfer or dismissal of the case. *Jumara*, 55 F.3d at 878.

Venue of actions brought under the Securities Exchange Act is governed by Section 27 of the Act, 15 U.S.C. § 78aa, which states in relevant part that:

> The district courts of the United States and the United States courts of any Territory of any other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder... Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations may be brought in any such district or in the district wherein the defendant is

found or is an inhabitant or transacts business...

28 U.S.C. § 1391 outlines the general provisions regarding venue. Pursuant to Subsection (b) of that statute,

> A civil action wherein jurisdiction is not founded solely on diversity of jurisdiction may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In this case, it is clear from the complaint that only one of the defendants, Joseph Shew, is a resident of this district; the remaining defendants with the exception of Peter Tafeen (who is a Florida resident) reside in California. Nevertheless, Plaintiffs allege that venue here is proper because a substantial part of the events (specifically their execution of the documents closing the sale of iPlace to Homestore) giving rise to this suit occurred in this district.

■ The Third Circuit Court of Appeals has made clear that acts or omissions must be more than tangentially connected to qualify as "substantial" under § 1391(a)(2). *Dollar Discount Stores of America, Inc. v. Petrusha*, Civ. A. No. 01–384, 2001 WL 881725, 2001 U.S. Dist. LEXIS 10877 (E.D.Pa. April 25, 2001), citing *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994). Indeed, "substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.*

Hence, the test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those "events or omissions giving rise to the claim," theoretically a more easily demonstrable circumstance than where a claim "arose." *Cottman, supra.*

■ In addition to this district being the situs of plaintiffs' execution of the closing documents, Plaintiffs submit that the defendants transact business here via the Internet. Generally speaking, jurisdiction and venue will be found to lie over a defendant if it enters into contracts with residents of that foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet. *See, e.g., Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636, 638–639 (E.D.Pa.1998); *Zippo Manufacturing Co. v. Zippo Dot Com.,Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997); *Livingston v. Weis, Voisin, Cannon, Inc.,* 294 F.Supp. 676, 682 (D.N.J.1968). Indeed, it does appear from the pleadings and from the company's website that Homestore's business is *all* conducted entirely over the Internet and that this regularly involves entry into contractual relationships and the knowing and repeated transmission of computer files over the web to Pennsylvania residents. Accordingly, we find that venue lies in this district as well as in California and the motion to dismiss must therefore be denied.

■ Turning next to the question of whether transfer would be appropriate, we note that the Supreme Court has recognized that § 1404(a) was intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness" and that it requires the courts to weigh in the balance a number of case-specific factors. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988), quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). These factors include such private interests as the plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records. *Jumara,* 55 F.3d at 879, citing 1A PT.2, JAMES W. MOORE & BRETT A. RINGLE, FEDERAL PRACTICE ¶ 0.345[5] (2d ed.1995) and 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3848–3851 (2d. ed.1986). Additionally, such public interests as the enforceability of the judgment, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home and the familiarity of the trial judge with the applicable state law in diversity cases. *Id. See Also: Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Gandalf Systems Corporation v. Tri–Tek Information Systems and Services,* Civ. A. No. 91–6278, 1992 WL 172596, *4, 1992 U.S. Dist. LEXIS 10376, *12 (E.D.Pa. July 10, 1992). Although ordinarily there is a strong presumption in favor of the plaintiff's choice of forum, where the plaintiff chooses a forum which is not his home, his choice should be given considerably less weight. *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).

■ Within this framework, a forum selection clause is treated as a manifesta-

tion of the parties' preferences as to a convenient forum. *Jumara*, 55 F.3d at 880. While courts therefore normally defer to a plaintiff's forum choice, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate forum. *Id.*, citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989); *Weiss v. Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y. 1992). Where the forum selection clause is valid, which requires that there have been no fraud, influence, or overweening bargaining power, the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum. *Id.*, citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914–1915, 32 L.Ed.2d 513 (1972). *See Also: Sparks Tune–Up Centers, Inc. v. Padussis*, Civ. A. No. 88–9525, 1990 WL 87283, 1990 U.S. Dist. LEXIS 7721 (E.D.Pa. June 19, 1990).

In the case at hand, we first observe that this district is home to **none** of the plaintiffs; rather all of the plaintiffs are Florida residents, as is defendant Peter Tafeen. As a result, their choice of this district is not accorded with the usual strong preference or weight. The defendants' preference is California which is the state in which Homestore's principal place of business is located and in which all but two of the individual defendants reside. While Plaintiffs aver that most of the evidence is "in the public domain," that their securities fraud claims will require very little discovery and that they will likely call no witnesses other than the parties to this action and a current corporate representative of Homestore, the defendants contend that the vast bulk of documents which will either prove or disprove the plaintiffs' claims are located in the Central District

of California. Given the record evidence before us, we would agree that it certainly appears as though a substantial amount of evidence is likely housed in California. Although it is certainly possible that these documents could be transported to Pennsylvania for trial, it is indisputably easier to arrange for their transport inter-state.

Defendants further assert, and the plaintiffs do not dispute, that many potentially key witnesses are former Homestore employees over whom they no longer have control but who are located in California and to whom the subpoena power of this district does not extend. In thus weighing all of the foregoing "private interest" factors, we conclude that the scale clearly weighs more heavily in favor of California than Pennsylvania.

As for the "public interest" factors, we find that the scales are evenly weighted. Indeed, there is no evidence that the docket is any more heavily congested in the Central District of California than it is here in the Eastern District of Pennsylvania or that the judgment would be any harder to enforce were it issued from one district rather than another. We are confident that our California brethren are just as capable of interpreting and applying federal securities law as is the undersigned and the other judges on this bench. We likewise find that the District Court in California is as well versed in the law of New York as is this Court, given that the parties have selected New York law as the law governing the execution, interpretation and performance of the Merger and Sale Agreement[1].

Moreover, it is the state or federal courts in Los Angeles, California in which the parties agreed to litigate "any non-arbitration action or proceeding arising out

---

1. The parties have chosen the law of California as the governing law for interpreting the Registration Rights Agreements. We find that this choice still further justifies the transfer of this matter to the Central District of California.

of or relating to this Agreement" [and Plan of Merger]. Although the plaintiffs strenuously argue that their claims actually arise out of the defendants' alleged breach of the Registration Rights Agreements and thus the forum selection clause of the Merger and Sale Agreement should have no force, we disagree. As paragraph 1.8 of the Merger Agreement provides that "[t]he Buyer Shares issued to stockholders will be entitled to registration under the Securities Act of 1933, as amended, and subject to a Registration Rights and Lock–Up Agreement...," we believe it is obvious that the plaintiffs' claims originated from a breach of this term of the Merger and Sale Agreement and that the Registration Rights Agreement is ancillary to the more comprehensive merger document. Because the plaintiffs have offered no evidence of fraud, influence, overweening bargaining power or anything else contesting the forum selection clause's validity, we find that they have not met their burden of showing why they should not be bound by this contractual provision.

Hence, given the enforceability of the parties' forum selection clause and that the balance of convenience clearly weighs in favor of the courts in California, we find that transfer of this action to the U.S. District Court for the Central District of California is appropriate and fair. For these reasons, the defendants' motion to transfer shall be granted in accordance with the attached order.

### ORDER

AND NOW, this 19th day of March, 2003, upon consideration of Defendants' Motion to Dismiss Action for Improper Venue or to Transfer Venue and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion to Dismiss is DENIED, the Motion to Transfer Venue is GRANTED and this case is TRANSFERRED to the U.S. District Court for the Central District of California.